**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Maria Esperanza**
**HERNANDEZ–CUARTAS,**
**Defendant-Appellant.**

No. 82–5241.

United States Court of Appeals,
Eleventh Circuit.

Oct. 17, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 2, 1983.

Carl H. Lida, Miami, Fla., Matt Weinstein, South Miami, Fla., Abraham Eckstein, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Neil Taylor, Lynne W. Lamprecht, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Appellant, Maria Esperanza Hernandez-Cuartas, was indicted for importation of cocaine into the United States, in violation of 21 U.S.C. § 952(a) and 21 U.S.C. § 960(a)(1); and possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Appellant's case came before a jury where she was found guilty on both counts. Appellant subsequently filed this appeal.

## FACTS

On December 26, 1981, appellant entered the United States at the Miami International Airport. She arrived via Braniff Airlines from Colombia, South America. Upon her arrival she presented her passport and Customs declaration to United States Customs Inspector, Jan Weitjdemuller. The inspector was trained in the use of drug courier profiles and recognized that Colombia was a leading source country from which illegal substances were frequently imported. The inspector noted from appellant's passport that she had made three prior visits to Miami during the preceding three months. With invisible ink, the inspector marked appellant's custom declaration with an "S"

and wrote on the declaration "four trips in four months." This was done to alert the secondary Customs Inspector who would see the "S" and the note, when he passed the material under ultraviolet light.

Appellant proceeded to the next station where she met Inspector Harold Hartford. Inspector Hartford was also trained in the use of drug courier profiles. Inspector Hartford examined the notations made by the previous inspector. Inspector Hartford then attempted to get appellant's attention to search her luggage. Appellant placed a coffee bag on the inspection counter. Appellant, according to the testimony at trial, appeared quite nervous. Inside the coffee bag were ten coffee containers. Hartford then noticed that appellant's eyes were riveted on the coffee bag. This, coupled with her nervousness, caused the Inspector to examine the coffee bag more carefully. Initially, Hartford removed two of the coffee cans and probed them, discovering only coffee inside. Appellant appeared to be in an extreme state of nervousness, bordering on the verge of collapse as Hartford began probing the third cannister. Hartford inserted his knife through the coffee can and as he withdrew the knife, he noticed it was covered with a white substance. Inspector Hartford performed a field test on the white powder and it tested positively for the presence of cocaine. Hartford then opened the remaining seven cannisters and discovered that out of the ten cans, six contained cocaine. In total there was approximately three and one half kilograms of 80% pure cocaine, having an estimated street value of over $200,000.

## ISSUE ON APPEAL

At trial, the Government introduced testimony from both custom inspectors regarding the use and meaning of drug courier profiles. Appellant made no objections to this testimony as it was introduced, but now raises on appeal that the admission of this testimony was sufficiently prejudicial so as to deny her a fair trial.[1] The testimony appellant now objects to is as follows:

Q: Did you specifically receive any training with regard to the types of individuals that would perhaps be inclined to bring illegal substances into the United States of America?

A: Yes. We have certain points or indicators with certain individuals that would bring the narcotics inside the United States.

Q: This would be, so to speak, like a drug courier profile.

A: It is what we call a profile and they normally will bring in the stuff and repeat certain movements, certain habits.

Q: You have, in your capacity as a Customs Agent, on occasion intercepted people out at the airport, coming from Columbia, [sic] fairly frequently, carrying contraband.

A: Yes.

 We note initially, that under Federal Rule of Evidence 401, the trial court is granted broad discretion both in determining the relevance of the evidence to be admitted and in determining whether the probative value of such evidence outweighs any inherent prejudice to the defendant. *United States v. Madera,* 574 F.2d 1320, 1322 (5th Cir.1978); *United States v. Thevis,* 665 F.2d 616, 634 (5th Cir. Unit B 1982), *cert. denied,* 456 U.S. 1008, 102 S.Ct. 2300, 73 L.Ed.2d 1303 (1982). Upon reviewing the determination of whether the evidence was properly admitted, generally this court looks to whether there was an abuse of

---

**1.** After a series of questions had been put to Customs Agent Weitjdemuller touching upon his training and experience and his answers had included reference to his training in what he described as drug courier and hijacker profiles, government counsel put a question seeking a response as to whether or not appellant fit any particular profile. At that point, appellant objected. While the trial judge indicated that the prosecutor might pursue the line of inquiry, the form of the question was criticized. Thereafter, a different question was put, properly inquiring as to those things which influenced the agent to assign appellant for a secondary inspection, and neither questions nor answers along this line touched upon the existence *vel non* of a "profile."

discretion by the trial judge. *See United States v. Madera,* 574 F.2d 1320 (5th Cir. 1978). However, in this instance, appellant failed to raise any objection to the admission of the drug profile testimony as it was introduced at trial. The initiative to object to improper admission of testimony is placed on the litigant and failure to object at trial causes a reviewing court to assess the issue under the standard of plain error. *See United States v. Grant,* 519 F.2d 64, 66 n. 3 (5th Cir.1975); *United States v. White,* 493 F.2d 3 (5th Cir.1974), *cert. denied,* 419 U.S. 901, 95 S.Ct. 186, 42 L.Ed.2d 147 (1974); *see also United States v. Harbin,* 601 F.2d 773, 780 (5th Cir.1979); Fed.R. Evid. 103(a)(1). Plain error is error which is obvious and which affects a litigant's substantial rights, and should be recognized only where there are exceptional circumstances which require the court to recognize the error to avoid a miscarriage of justice. Fed.R.Evid. 103(d); *United States v. Cormier,* 639 F.2d 1177, 1182–83 (5th Cir. Unit B 1981).

Appellant argues that the prejudicial effect of the admission of this testimony far outweighed any probative value and denied appellant a fair trial. Appellant asserts that the former fifth circuit has consistently held that the drug courier profile information does not constitute reasonable, articulable suspicion. There is no doubt that most circuits have concluded that the use of drug courier profiles to establish reasonable suspicion should be viewed critically. *See United States v. Berry,* 636 F.2d 1075 (5th Cir. Unit B 1981). We concur in this conclusion. Drug courier profiles are inherently prejudicial because of the potential they have for including innocent citizens as profiled drug couriers. Generally, the admission of this evidence is nothing more than the introduction of the investigative techniques of law enforcement officers. Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law enforcement officers in investigating criminal activity. Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation. Although this information is valuable in helping drug agents to identify potential drug couriers, we denounce the use of this type of evidence as substantive evidence of a defendant's innocence or guilt. *See United States v. Hall,* 653 F.2d 1002 (5th Cir. Unit A 1981); *United States v. Berry,* 636 F.2d 1075 (5th Cir. Unit B 1981).

 However, the testimony admitted in this case regarding a drug courier profile was used purely for background material on how and why Ms. Hernandez-Cuartas was stopped and searched by the custom officers. It is clear from the officers' testimony that the drug courier profile information was merely a preliminary consideration which prompted the officers to subject the appellant to a full customs inspection. In this instance, both the prejudicial effect and the probative value of this evidence is highly questionable. Appellant attempts to imply that the admission of the custom officers' statements were prejudicial because this information does not establish a justifiable reason to search a party upon entrance into this country. Appellant fails to recognize that her search occurred at a border stop upon her entrance from a foreign country. There is no requirement for a warrant or any level of suspicion to justify searching persons or goods upon arrival into the United States. *United States v. Stone,* 659 F.2d 569 (5th Cir. Unit B 1981); *United States v. Gutierrez,* 667 F.2d 16 (5th Cir. Unit B 1982). Custom officers may elect to inspect each and all individuals or items as they enter our borders with complete impunity. *Stone,* 659 F.2d at 573.

Accordingly, although we denounce the use of drug courier profiles as substantive evidence of guilt, we find that the use of this testimony in this case was not for evidence of guilt, but rather for background information. The prejudicial effect of the admission of this testimony was slight as was the probative value because this evidence was not necessary or relevant to the charges against the appellant. The appellant was convicted based on her possession of the cocaine upon entry into this country. The custom officials were well within the

law when they elected to inspect the appellant and the goods she was transporting. Having concluded that the admission of this evidence did not amount to plain error we AFFIRM.