The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Tomas Balbino PEREZ, Defendant–Appellant.**

No. 90CA0865.

Colorado Court of Appeals, Div. IV.

Oct. 22, 1992.

Rehearing Denied Nov. 19, 1992.

Certiorari Denied May 24, 1993.

---

\* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Roger G. Billotte, Asst. Atty. Gen., Denver, for plaintiff-appellee.

Dennis W. Hartley, P.C., Dennis W. Hartley, Colorado Springs, for defendant-appellant.

Opinion by Judge JONES.

Defendant, Tomas B. Perez, appeals the judgment of conviction entered after he was found guilty, in a trial to the court, of possession of a controlled substance by a special offender. He argues that his conviction was erroneously obtained with evidence that should have been suppressed. We affirm.

Defendant purchased five one-way airline tickets at the Colorado Springs Airport for a flight departing to Los Angeles the next morning. An airline counter employee reported defendant's purchase to the police department, relating that defendant, a black man, had acted nervous, had been reluctant to provide names for the tickets, spoke with a foreign accent, and paid for the tickets with 90 one-dollar, five-dollar, and twenty-dollar bills. Because the clerk's description of the purchase was consistent with a drug courier profile, several police officers were directed to be at the airport prior to defendant's scheduled departure time to determine if there were any other characteristics that would match those of a person involved in illegal activity.

Approximately ten minutes before his flight's scheduled departure, defendant arrived at the airport in a red vehicle along with four women, all of whom exited the vehicle with only carry-on luggage. Defendant then drove to the long-term parking lot and parked the vehicle before returning to the terminal. Airline employees indicated to the three police officers located at the terminal entrance that defendant was the person who had purchased the tickets the previous day. In addition, one of the officers, a detective, thought that he recognized defendant as an individual on whom the department had an outstanding arrest warrant.

A second police officer asked the companions of defendant for identification and then walked them to a seating area near where the detective was standing with a third officer. When the defendant approached the seating area, the detective informed him that he was a police officer and asked him for identification. Defendant stated that his name was Tomas Perez. The detective again asked defendant for identification, at which time another officer reported that the tickets for the five individuals were in the name of Belz.

Defendant indicated that his wallet was in his briefcase, which he picked up and carried a few paces to a small waiting area where he sat down in a chair. He placed the briefcase on his lap, facing him, and opened the case about two inches, sliding his hand inside. The detective, who testified that he thought defendant might be reaching for a gun, then took two or three steps toward defendant and grabbed the lid of the briefcase and pulled it open while stepping around the side of defendant. The detective picked up the briefcase by the lid and saw that defendant had his hand on a wallet and also observed that the case contained several bundles of United States currency. The officer then set the briefcase down on the floor.

Defendant withdrew several pieces of identification from his wallet and stacked them on top of it. The detective reported that: "The black male stood up at this time in front of [me] in a threatening manner and [handed me] a Colorado identification card." The card pictured defendant and the name on it was Tomas Perez.

The detective, who stated that he thought he had seen defendant remove two Colorado driver's licenses from his wallet, asked defendant for additional identification. The detective testified that defendant shielded his wallet "and was twisting and turning from me." On conflicting testimony as to what happened next, the trial court found that defendant had shoved into the detective, and then started pushing and pulling against him. A uniformed officer

was called over to assist the detective, and defendant was placed under arrest for interfering with a police officer.

Defendant was found to have been carrying identification under names other than Tomas Perez. Incident to arrest, the officers searched defendant, and removed a bundle of cash and a safety deposit box key from his pockets, as well as his briefcase, from which they obtained another safety deposit box key as well as thirty-three to thirty-six thousand dollars in cash. The officers then had a narcotics trained dog sniff the items of luggage and the dog "alerted" on the briefcase containing the cash.

Certain officers also, at that time, proceeded to the parking lot where they observed, through the front windshield of the vehicle that defendant had been driving, a plastic bag of a white powdery substance on the console. The officers obtained a search warrant for the vehicle and seized cocaine from the console, from an imitation coffee can, and from an oil can with a false bottom, in addition to safety deposit box keys from under the floor mat. The police then secured search warrants for several local financial institutions relative to the safety deposit box keys.

Defendant moved to suppress the evidence seized by virtue of the police officers' search of his person, his briefcase, and his vehicle, primarily on the grounds that the evidence was obtained as the result of an illegal arrest. Following a hearing, the trial court denied defendant's motions to suppress.

### I.

Defendant contends that the initial stop by the police officers was constitutionally invalid because they lacked probable cause to seize him and that the trial court thereby erred in denying his motion to suppress the evidence thereafter obtained. The People respond that the stop was justified because the police had reasonable suspicion to conduct a limited investigative stop. We agree with the People that the initial stop was justified.

Moreover, the record reflects that there was sufficient evidence for the trial court to determine that the officers possessed the requisite reasonable suspicion necessary to expand the scope of the investigative stop. Thus, the stop was constitutionally valid, and the trial court did not err in denying defendant's motion to suppress evidence.

▮ A police officer may make a limited intrusion into an individual's personal security on less than probable cause when three conditions exist: (1) there must be an articulable and specific basis in fact for suspecting that criminal activity has taken place, is in progress, or is about to occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Rahming*, 795 P.2d 1338 (Colo.1990). *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

▮ In determining whether these conditions exist, the critical focus centers upon whether there existed specific, articulable facts known to the officer immediately prior to the intrusion which, taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity which justified the intrusion into defendant's personal security. *People v. Rahming, supra; People v. Mascarenas*, 726 P.2d 644 (Colo.1986).

▮ As the trial court found, the police knew several facts about defendant and his activities that were consistent with a "drug courier profile," which is employed by law enforcement agencies, and which also had independent evidentiary value. The characteristics conforming to such a profile, which the officers identified at the time defendant was initially stopped, included: that defendant had paid for the airline tickets with currency in small denominations; each ticket was one-way to a destination considered a "source city" for illicit drugs; at the time of purchase, defendant had to be prompted to give names for the ticket holders, and the surname for each ticket holder was the same; defendant arrived about 10 minutes before departure, and he and his party had only carry-on luggage.

Considering the totality of the circumstances, the trial court ruled that these facts rise to the level of articulable, reasonable suspicion that criminal activity was occurring or about to occur and that defendant was involved in such activity.

We agree, and conclude that the police officers had an articulable basis for suspecting that defendant may have been involved in criminal activity. *See U.S. v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *U.S. v. Pulvano*, 629 F.2d 1151 (5th Cir.1980). Thus, we further conclude that a valid investigatory detention was initiated when the officers stopped defendant for the purpose of asking him to produce identification. *See Florida v. Rodriquez*, 469 U.S. 1, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984).

■ An investigatory detention may be only a limited intrusion that must be reasonably related to its purpose, and any investigative detention must last no longer than is necessary to effectuate that purpose. Furthermore, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *People v. Rahming, supra.*

■ In order to use force or the implied threat of the use of force in the course of an investigatory detention, absent probable cause, the state bears the burden of demonstrating that the officers had reasonable suspicion to expand the scope of the seizure. *Florida v. Royer, supra; Terry v. Ohio, supra.*

Here, two police officers testified that, when defendant opened his briefcase ostensibly to retrieve the requested identification, his manner and body language caused them to become concerned that he was reaching for a weapon. The detective testified as follows:

He's looking around at that time and he's looking left and he's looking right, you know, darting around, his eyes and his head. And you know, looking at that, his expression and his demeanor looks almost as if a person that's ready to spring

up and run, someone that's cornered. And I'm standing there and I'm thinking to myself and he's reaching in this briefcase and I'm going—I think he might be reaching for a gun, you know....

Another officer offered similar testimony:

He kind of walked backwards to a chair which was three or four feet away, sat down on the edge with the briefcase in his lap and opened the case just a small way, alarmed us just that his actions—they weren't as like he was just nonchalantly getting into his brief case for ID, but his eyes kept going back and forth between myself and the other detectives, and he was just putting his hand in to get something. We were concerned there might be a weapon involved and we were concerned for our safety.

■ In addition to their corroborating testimony as to defendant's actions, both officers testified that they had misidentified defendant as an individual who was a fugitive from justice. They testified that this misidentification contributed to the suspicion with which they regarded defendant's actions. In this regard, the trial court found, and we agree, that photographs offered into evidence show substantial similarities between defendant and the fugitive. Thus, the officers' misidentification of defendant may be considered in assessing whether the officers had reasonable suspicion or grounds for expanding the scope of their seizure of defendant. *See People v. Cooper*, 731 P.2d 781 (Colo. App.1986).

■ Under the standards established in *Terry v. Ohio, supra,* police officers may conduct a limited search for weapons if, in the course of an investigatory detention based on reasonable suspicion, the officers reasonably suspect that his or her personal safety requires such a search. In addition, an experienced police officer may consider defendant's furtive gestures and conduct as factors contributing to an officer's reasonable suspicion that his or her personal safety may be placed in jeopardy. *People v. Hughes*, 767 P.2d 1201 (Colo.1989); *Peo-*

*ple v. Johnson*, 691 P.2d 751 (Colo.App. 1984).

 And, while police officers may not seek to verify their suspicions by means that approach the conditions of arrest, *Florida v. Royer, supra,* nevertheless, given the totality of the circumstances here, including defendant's conduct consistent with that of a drug courier profile, his similarity to that of a suspected fugitive, and his furtive conduct, the record supports the trial court's finding that the police officers had reasonable suspicion to expand the scope of their seizure of defendant for the limited purpose of ascertaining whether defendant was withdrawing a weapon from his briefcase.

Furthermore, as noted above, on conflicting testimony the trial court found that the defendant "shoved into" one officer and then "started pushing and pulling" against that officer. This episode resulted in his being arrested for obstruction and resisting arrest. Since there is sufficient support in the record for the trial court's finding, we will not disturb it on appeal.

 It is true that the charges of obstruction and interference were dismissed because of insufficient evidence. However, the dismissal of those charges is not determinative of whether the officers were justified in expanding the scope of the seizure of defendant's person. Rather, for the officers' actions to be within constitutional bounds, the evidence need be no more than sufficient to demonstrate that the officers were possessed of reasonable suspicion and, therefore, had grounds to expand the scope of their seizure by using restraining force. *Florida v. Royer, supra; Terry v. Ohio, supra.* That standard was met here.

Accordingly, we conclude that there was sufficient evidence in the record here to demonstrate that the officers had reasonable suspicion and reasonable grounds temporarily to detain defendant and to expand the limits of their investigative detention. Thus, the trial court did not err in denying defendant's motion to suppress the evidence that resulted from that contact.

II.

We find no merit in defendant's arguments regarding the sufficiency of the warrants and affidavits issued for the safety deposit boxes. Having reviewed the warrants and the affidavits, we conclude that they are sufficiently descriptive so as to state with particularity the things to be seized. Thus, the warrants and the affidavits issued for the safety deposit boxes are constitutionally valid.

The judgment of conviction is affirmed.

CRISWELL and DAVIDSON, JJ., concur.