**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Jose C. SALCEDO, Defendant–Appellant.**

**No. 96CA0880.**

Colorado Court of Appeals, Div. A.

May 14, 1998.

Rehearing Denied July 2, 1998.*

Certiorari Granted May 10, 1999.**

* Tursi, J., would *GRANT.*

** JUSTICE SCOTT and JUSTICE MARTINEZ would also grant as to the following issue:

Whether the trial court erred in denying petitioner's motion for a mistrial when prosecution's witness stated that when petitioner was arrested, he had in his possession counterfeit currency.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Thomas M. Van Cleave, III, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Jose C. Salcedo, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of unlawful possession with intent to distribute a controlled substance and unlawful possession of twenty-eight grams or more of cocaine. He also challenges the jury's determination that he was a special offender. We affirm in part and vacate in part.

On May 1, 1995, defendant arrived at Denver International Airport (DIA) on a flight from Los Angeles. A Denver Police detective and a Drug Enforcement Administration

agent were watching the passengers deplane from defendant's flight in an effort to discover and arrest persons carrying illegal drugs. They followed defendant after he got off the plane because he was one of the few people not dressed in a business suit; he was not carrying a briefcase, garment bag, book, camera, or any other carry-on luggage; and he appeared very nervous.

After defendant had picked up his suitcase from the baggage carousel, the detective and DEA agent stopped him and asked for his airline ticket and identification. According to the detective, as defendant looked though his wallet, his hands were trembling. While the detective was checking the identification tag on defendant's suitcase, defendant blurted out, "That's not my bag. I am just carrying it for someone. I don't know what's in there. You can take fingerprints. Mine aren't in there." The detective then asked if he could search defendant's suitcase, and defendant consented. Inside the suitcase were women's clothing and men's undergarments, a stuffed animal, and a giftwrapped package containing three kilograms of cocaine. When the cocaine was discovered, defendant was placed under arrest.

Defendant claimed that the suitcase was given to him by a friend just before he left Los Angeles and that he did not know that it contained cocaine. The prosecution leading to the convictions at issue here followed.

## I.

Defendant contends that the trial court erred by allowing the detective to testify as an expert witness. Specifically, he asserts that the court improperly admitted testimony by the detective that defendant matched a drug courier profile as evidence that defendant knew his suitcase contained illegal drugs. Although we agree that such testimony was improper, we conclude that the error was harmless.

At trial, over defendant's objection, the trial court allowed the detective to testify as an expert as to indicators used to identify drug couriers. In addition, the court permitted him to give his opinion "that based on his experience, someone who exhibits these indi-

cators is more likely than not to be a drug dealer."

Initially, the detective identified the following as indicators exhibited by defendant: (1) he arrived from a "source city" for drugs; (2) he was wearing a large cross; (3) he was acting very nervous; (4) he had no carry-on baggage; and (5) he did not carry a book or magazine.

Next, the detective explained the significance of these indicators by comparing defendant's actions to those of drug couriers in general. The detective stated, for example, that: (1) the cross defendant wore was the type of "disclaimer" often used by drug smugglers to make it appear as if they are religious and therefore not likely involved in illegal activities; (2) his nervousness was the type of behavior usually exhibited by someone carrying an illegal controlled substance; and (3) his not carrying a book or magazine was consistent with the profile because "the majority" of people carrying illegal drugs "are basically too nervous . . . to read."

Additionally, the detective testified that, like the defendant here, most drug couriers purchased their tickets just prior to departure and paid in cash. He also said he was not surprised that defendant consented to a search of his suitcase because "99 percent of the time" drug smugglers give such consent. Also, the detective described the clothing found in the suitcase as "fill," which is commonly used to make the suitcase appear normal and keep the cocaine in one position.

At the end of the direct examination, the detective stated an opinion that, based on all the indicators defendant had exhibited, it was his expert opinion that it was "more likely that defendant was the person smuggling the cocaine."

In closing arguments, the prosecutor emphasized the detective's testimony. He argued that defendant exhibited the indicators of a drug courier and that, because he was found with cocaine, he was in fact a courier. At one point, the prosecutor commented:

[W]hat [the detective] talks about is indicators that he saw, that cause and effect indicators were there, and sure enough, as is [the detective's] experience, there were

drugs in that man's [defendant's] suitcase. No doubt in [the detective's] mind what was going on. *That man knew.* That man was displaying the indicators the minute he stepped off that airplane. (emphasis added)

A trial court may admit expert testimony if it will assist the trier of fact in understanding the evidence or in determining a fact in issue. CRE 702; *People v. Galimanis,* 944 P.2d 626 (Colo.App.1997). The decision to admit expert testimony is within the discretion of the trial court, and its ruling will not be reversed on appeal unless it is manifestly erroneous. *People v. Williams,* 790 P.2d 796 (Colo.1990).

Under CRE 403, a trial court has discretion to exclude relevant expert testimony if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *People v. District Court,* 869 P.2d 1281 (Colo.1994); *People v. Galimanis, supra.*

A division of this court has determined that use of a drug courier profile may be permissible to establish probable cause for an investigatory detention. *People v. Perez,* 852 P.2d 1297 (Colo.App.1992). However, whether expert testimony regarding drug courier profiles may be used as substantive evidence of a defendant's guilt is an issue of first impression in Colorado.

Most courts that have considered the issue have disapproved the use of such profiles to prove guilt. *See United States v. Jones,* 913 F.2d 174 (4th Cir.1990); *United States v. Hernandez–Cuartas,* 717 F.2d 552 (11th Cir. 1983); *Dean v. State,* 690 So.2d 720 (Fla.Dist. Ct.App.1997); *People v. Hubbard,* 209 Mich. App. 234, 530 N.W.2d 130 (1995); *but see United States v. Foster,* 939 F.2d 445 (7th Cir.1991).

In *United States v. Hernandez–Cuartas, supra,* 717 F.2d at 555, the court pointed out that drug courier profiles "are inherently prejudicial" because innocent citizens as well as actual drug smugglers may fit the profile. The court stated further that:

Every defendant has a right to be tried based on the evidence against him or her, not on the techniques utilized by law en-

forcement officers in investigating criminal activity. Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation. Although this information is valuable in helping drug agents to identify potential drug couriers, we denounce the use of this type of evidence as substantive evidence of a defendant's innocence or guilt.

We agree that the use of drug courier profiles as substantive evidence of guilt is improper. The improper inference to be drawn from such testimony is that a defendant is a drug smuggler because his or her behavior or appearance was similar to that exhibited by drug smugglers who have been previously encountered. *See Dean v. State, supra,* 690 So.2d at 723 ("The jury is asked to infer that because defendant's behavior was similar to the behavior of other drug dealers that the officer had previously arrested or observed, defendant must likewise be guilty."). As was pointed out in *United States v. Hernandez–Cuartas, supra,* such profiles cast a net which may very well ensnare the innocent as well as the guilty.

Here, despite the People's argument to the contrary, the prosecution did use the detective's drug courier profile testimony as substantive evidence of defendant's guilt. The trial court's ruling on the admissibility of the detective's testimony, the substance of the testimony itself, and the prosecutor's closing argument all demonstrate that at least one purpose of the profile testimony was to establish defendant's knowledge of the contents of his suitcase.

Nevertheless, in light of the overwhelming independent evidence of defendant's guilt here, we conclude that the error was harmless. *See United States v. Williams,* 957 F.2d 1238 (5th Cir.1992); *United States v. Quigley,* 890 F.2d 1019 (8th Cir.1989).

In *United States v. Williams, supra,* 957 F.2d at 1243, the court found that the improper use of drug profile testimony was harmless because evidence independent of the profile testimony showed that:

(1) Williams appeared nervous when deplaning; (2) before handing [the officer]

his ticket Williams removed it from the ticket jacket which contained the baggage claim tickets; (3) Williams's hand was shaking badly as he handed [the officer] the ticket; (4) Williams held a one-way ticket that had been purchased with cash that day, even though he said he had been visiting friends for a week or so; (5) the narcotics dog alerted to a suitcase with Williams's name on it; (6) Williams admitted that the suitcase belonged to him; (7) Williams's chest began 'heaving up and down' when [the officer] asked whether the suitcase belonged to him; and (8) the Officers found cocaine in the unlocked suitcase.

Similarly, here, quite apart from the improper drug profile testimony, the evidence demonstrated that: (1) defendant appeared very nervous when deplaning and kept looking behind him; (2) when he was stopped by the detectives and asked for identification, his hands were "trembling" and "shaking"; (3) without any prompting, defendant blurted out that the bag did not belong to him, that he was "just carrying it for someone," and that his fingerprints were not on it; (4) his name and phone number were handwritten on the identification tag on his suitcase, and he admitted to having filled out the tag himself; (5) while the detective was looking at the identification tag, defendant was taking repeated deep breaths; (6) although defendant had told the detective that he was coming to Colorado to work on a dairy farm for a month, he had brought virtually no clothing and not even a toothbrush or razor; (7) defendant did not know the name of the dairy farm, where it was located, or how he was going to get there; and (8) his suitcase contained three kilograms of cocaine.

Therefore, because overwhelming evidence of defendant's guilt exists independent of the improperly admitted drug courier profile testimony, we conclude that the error in allowing the use of profile testimony to establish defendant's knowledge of the illegal contents of his suitcase here did not substantially influence the verdict or affect the fairness of the trial. Accordingly, the error was harmless.

## II.

Next, defendant contends that the trial court abused its discretion and deprived him of his constitutional right to present a defense by excluding proffered expert testimony on Mexican culture to rebut the prosecutor's expert testimony on drug courier profiles. We disagree.

Defendant offered a psychologist as an expert in Mexican culture to provide alternative explanations for the indicators described by the detective as showing defendant was a drug courier. According to defendant, the expert would give a "culturally based explanation" as to why defendant was traveling without any luggage or clothing and why he wore a cross.

However, the trial court determined, and we agree, that such testimony did not constitute specialized knowledge that would assist the trier of fact. See CRE 702; People v. Williams, supra.

No specialized knowledge was required to show, for example, that one might be wearing a cross because he or she is religious. Also, defendant presented no offer of proof as to what relevant information the expert could impart that members of the jury could not themselves arrive at through a common sense evaluation of the evidence. Further, through the cross-examination of the detective, defendant was able to point out alternative explanations for most of the supposed indicators.

Accordingly, we find no abuse of discretion here and no infringement on defendant's right to present a defense.

## III.

Defendant next contends that the trial court erred in refusing to admit photographs of himself and his daughters. We perceive no error.

Photographs are generally admissible to show anything about which a witness may testify. However, before a photograph may be admitted, a party must lay an adequate foundation showing that the conditions it depicts are substantially similar to those at issue. People v. Thiery, 780 P.2d 8 (Colo.

App.1989). Furthermore, a trial court's decision to exclude evidence on the basis of a lack of proper foundation will not be disturbed absent a clear abuse of discretion. *People v. Perryman,* 859 P.2d 263 (Colo.App. 1993). An abuse of discretion occurs if the trial court's decision is manifestly arbitrary, unreasonable, or unfair. *King v. People,* 785 P.2d 596 (Colo.1990); *People v. Aponte,* 867 P.2d 183 (Colo.App.1993).

### A.

Defendant attempted to introduce a photograph of his daughters. He argued that the photograph would allow the jury to estimate the size of his daughters and would show that the women's clothing in the suitcase had not belonged to them. According to defendant, this evidence would have supported his theory that the suitcase had been given to him by a friend and that he had not known it contained cocaine.

A friend of defendant's family testified that the women in the photograph were, in fact, defendant's daughters, but said he did not know when the photo had been taken. The trial court excluded the photograph because there was insufficient evidence to show that it accurately depicted the size of defendant's daughters "at the time they may or may not have had access to the clothing" in the suitcase.

Because the foundation was insufficient, we find no error in the trial court's determination. *Cf. Sandoval v. People,* 172 Colo. 383, 473 P.2d 722 (1970)(sufficient foundation existed where it was shown that photographs accurately depicted the condition of defendant's hands as they existed at the time of his arrest).

Moreover, the witness testified as to the approximate weight and height of each of defendant's daughters. This information enabled the jury to determine whether the women's clothes found in the suitcase might have belonged to defendant's daughters.

### B.

Defendant also attempted to admit photographs of himself "to show that's how he always looks." Because defendant's general appearance did not relate to any contested issue at trial, we agree with the trial court's determination that such photographs were not relevant. *See* CRE 401; *People v. More,* 668 P.2d 968 (Colo.App.1983).

### C.

Finally, because defendant failed to specify which photographs were wrongfully excluded, we are unable to review his claim that the trial court erroneously excluded photographs depicting his lifestyle. *See Westrac, Inc. v. Walker Field,* 812 P.2d 714, 718 (Colo.App.1991)("It is the duty of counsel to inform the court both as to specific errors relied upon and as to the grounds, supporting facts, and authorities therefor.").

Accordingly, we find no error here.

### IV.

Defendant next contends that the trial court erred in denying his motion for a mistrial. Again, we disagree.

A mistrial is a drastic remedy which is warranted only when the prejudice to the accused is so substantial that its effect on the jury cannot be remedied by any other means. Because the trial court is in a better position to evaluate any adverse effect that improper testimony might have upon a jury, it has discretion to determine whether a mistrial is warranted. Absent a gross abuse of that discretion and prejudice to the defendant, we will not disturb on review a trial court's decision to grant or deny a motion for a mistrial. *People v. Abbott,* 690 P.2d 1263 (Colo.1984); *People v. Price,* 903 P.2d 1190 (Colo.App.1995).

Defendant argues that the trial court should have granted a mistrial as a result of the following testimony given by the detective on cross-examination:

Q: Detective ... one of the things that [defendant] had in his possession was some small photo copies of hundred dollar bills, right?

A: Yes.

Q: And that's basically play money, right?

A: Yes.

Q: And that money was sent to the Secret Service, right?

A: It was turned over to a Secret Service agent at Denver police headquarters, yes.

Q: Okay.

A: *Along with a five dollar bill which was found to be counterfeit.* (emphasis added)

The trial court denied defendant's motion for mistrial and instructed the jury as follows:

Members of the jury, [the detective] volunteered some information about the five dollar bills that were found on the defendant's person being sent to the secret service, and he indicated that his understanding was that they were counterfeit. That question was not asked of [the detective]. Its [sic] response was hearsay and you are directed to disregard that evidence.

 Defendant argues that a mistrial was warranted because the detective's testimony amounted to improper evidence of prior criminality, and that the error was compounded by the trial court's having referred to the counterfeit bill in instructing the jury to disregard the detective's testimony.

However, because the comment made by the detective was not solicited by the prosecutor, was peripheral to the issues of the case, and was addressed by an appropriate curative instruction, we find no abuse of discretion. *See People v. Price, supra.* We also fail to see how the trial court could properly instruct the jury to disregard a specific statement without referring to some extent to the statement itself.

## V.

Defendant also contends that the trial court erred by responding to a jury question in the absence of defendant and his counsel. We perceive no error.

 It is the appellant's duty to provide this court with an adequate record in support of any claimed error. *See Westrac, Inc. v. Walker Field, supra.*

If a transcript of a proceeding is not available, an appellant must prepare a statement which reflects what occurred at that proceeding from the best available means, including his or her recollection. Opposing counsel must then be given an opportunity to serve objections or propose amendments, and the statement must then be submitted to the trial court for settlement and approval and, ultimately, for inclusion in the record on appeal. C.A.R. 10(c); *People v. Conley,* 804 P.2d 240 (Colo.App.1990).

Here, no record exists as to the trial court's formulation of its response to the jury's question, and no statement was submitted pursuant to C.A.R. 10(c). Accordingly, we are unable to determine who was or was not present at the time the court submitted the response to the jury's inquiry. Defendant could have submitted a statement, for example, indicating that he and his counsel were in fact absent when proceedings were held involving the jury inquiry. On the record before us, however, we find no error.

## VI.

Finally, the defendant contends that his conviction and sentence for unlawful possession of twenty-eight grams or more of cocaine must be vacated because no such offense exists. We agree.

 Defendant was convicted and sentenced for unlawful possession with intent to distribute a controlled substance pursuant to § 18–18–405(2)(a), C.R.S.1997. He was also convicted and sentenced for unlawful possession of twenty-eight grams or more of cocaine pursuant to § 18–18–405(3)(a), C.R.S. 1997.

Section 18–18–405(3)(a) states, in pertinent part, that:

Except as otherwise provided in section 18–18–407 relating to special offenders, any person convicted pursuant to paragraph (a) of subsection (2) of this section for knowingly ... possessing with intent to ... distribute ... an amount that is ...

(I) At least twenty-five grams or one ounce but less than four hundred fifty grams of any material, compound, mixture, or preparation that contains a schedule I or sched-

ule II controlled substance as listed in section 18–18–203 or 18–18–204 shall be sentenced to the department of corrections for at least the minimum term of incarceration in the presumptive range provided for such offense in section 18–1–105(1)(a)

. . . .

The People agree that this statute does not create a separate offense for possessing twenty-eight grams or more of cocaine, but instead is merely a mandatory sentencing provision.

Therefore, defendant's conviction and sentence for possession of twenty-eight grams or more of cocaine are vacated; the judgment is affirmed in all other respects.

Judge STERNBERG***, concurs.

Judge TURSI, dissents

Judge TURSI dissenting.

I respectfully dissent.

I am not persuaded that it was harmless error to allow the police officer to testify that, because defendant exhibited characteristics consistent with a drug courier profile, it was his expert opinion that defendant was smuggling cocaine. To the contrary, in my view, such testimony affected a substantial right of the defendant and, thus, was prejudicial error.

Here, defendant's guilt or innocence hinged on whether the admissible evidence established beyond a reasonable doubt that he knew that the bag he was carrying contained cocaine. In light of defendant's denial of such knowledge, the officer's testimony cannot be considered as without significance.

Initially, the majority finds that the police officer's conclusion that the defendant was carrying drugs was harmless error because there exists "overwhelming" evidence of defendant's guilt independent of the drug profiler's testimony. However, that incriminating evidence is inextricably interwoven with the drug profiler testimony and is tainted thereby. Harmless, or not, such testimony cannot be used to sustain a conviction. Further-

more, this same testimony is characterized by the majority as being susceptible to alternative inferences without the need for explanatory expert testimony. That characterization suggests that, at best, the drug profile testimony may be sufficient to meet a preponderance standard of proof, but is certainly not probative beyond a reasonable doubt.

As to a related contention, defendant's expert was prepared to give a cultural explanation for all the indicators relied upon by the prosecution's expert in concluding that defendant was a drug courier. In my view, since the damaging expert testimony based upon the drug courier profile had been presented, the door had been opened for this opposing expert testimony and fundamental fairness required its admission. *See People v. Miller*, 890 P.2d 84 (Colo.1995)(The concept of "opening the door" represents an effort by the courts to prevent one party in a criminal trial from gaining and maintaining an unfair advantage by a selective presentation of facts, that without being elaborated or placed in context, create an incorrect or misleading impression).

For the type of error that is at issue here, if there is a reasonable probability from review of the entire record that the defendant could have been prejudiced by the error, then it may not be characterized as harmless. *Key v. People*, 865 P.2d 822 (Colo.1994).

The appropriate inquiry is *not* whether there was sufficient evidence to support the verdict without the improperly admitted evidence, rather, the proper focus is whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *People v. Carlson*, 712 P.2d 1018 (Colo. 1986). In my view, the testimony and the conclusion of the police officer as an expert based on the drug profiler type evidence clearly and prejudicially implicated substantial rights of the defendant, *see* CRE 103(a) and Crim. P. 52(a), and the prejudice was aggravated by the denial of the right of defendant to present exculpatory testimony.

*** Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S.1997.

Therefore, I would reverse and remand for a new trial.