The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Roberto V. RAMIREZ, Defendant–Appellant.

No. 97CA2249.

Colorado Court of Appeals, Div. V.

July 8, 1999.

Rehearing Denied Sept. 2, 1999.

Certiorari Denied May 22, 2000.\*

Whether expert testimony stating, among other things, that people who possess drugs nevertheless consent to searches for drugs, that people carrying drugs for others always know the packages they are carrying contain drugs, that

drug dealers & quot; step up & quot; cocaine, that drugs arrive from specific & quot; source & quot; cities, and that interstate highways are used to traffic drugs, constitutes improper and inadmissible drug courier profile evidence or proper and admissible modus operandi evidence.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Elizabeth Rohrbough, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Karen N. Taylor, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

Defendant, Roberto Valles Ramirez, appeals the judgment of conviction entered on a jury verdict finding him guilty of possession with intent to distribute a controlled substance, possession with intent to distribute 28 grams or more of a controlled substance, and possession of a controlled substance. We affirm in part and vacate in part.

## I.

Defendant contends that the trial court erred in denying his motion to suppress evidence obtained during a vehicle search because the police lacked the reasonable suspicion of criminal activity required to justify an investigatory stop. We disagree.

An investigative stop based on reasonable suspicion is an exception to the constitutional requirement that a search and seizure must be premised on a warrant. *People v. Greer,* 860 P.2d 528 (Colo.1993). *See* § 16–3–103(1), C.R.S.1998.

The purpose of an investigatory stop is to permit a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning. To meet constitutional standards, investigatory stops must be justified by a reasonable suspicion that criminal activity is afoot. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

A determination whether reasonable suspicion exists focuses on whether, based on the totality of the circumstances, there are specific, articulable facts known to the officer which, taken together with reasonable inferences, create a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security. *People v. Salazar,* 964 P.2d 502 (Colo.1998).

A trained police officer can draw inferences and make deductions that might elude an untrained person. *People v. Hazelhurst,* 662 P.2d 1081 (Colo.1983). However, an officer's undefinable hunch of criminal activity alone cannot constitute a reasonable suspicion. *People v. Coca,* 829 P.2d 385 (Colo.1992).

Among the factors a trial court should consider in determining whether officers had a reasonable suspicion to stop a suspect are the officers' objective observations and consideration of the modes or pattern of operation of certain kinds of lawbreakers. *People v. Hazelhurst, supra.* Additional factors include an area's reputation as a locus of drug activity, an individual's attempt to shield his or her conduct from view, an officer's knowledge that one of the observed parties is a known drug user, and the person's nervous

or unduly cautious behavior. *See People v. Sutherland,* 886 P.2d 681 (Colo.1994); *People v. Greer, supra.*

■ On appeal, the trial court's findings of fact are reviewed for clear error, but its determination whether reasonable suspicion existed based on those facts is reviewed *de novo. People v. Smith,* 926 P.2d 186 (Colo. App.1996).

Here, a police officer with over ten years experience as a narcotics officer was conducting surveillance at a motel which, based on his own experience as well as that of fellow officers, was known for drug trafficking. In the officer's experience, out-of-state vehicles transported drugs into Colorado to destinations such as this motel. Other individuals would then pick up these vehicles and transport the drugs to other locations.

On this particular night, the officer noticed a vehicle with Arizona license plates. The officer testified at the suppression hearing that cities in Arizona, including Phoenix and Tucson, are source cities for drugs transported out of Mexico and into Colorado.

After observing the apparent owner of the vehicle enter a room at the motel, the narcotics officer obtained the name of the person registered in that room. A search for that name was conducted in various criminal agency databases including the Narcotics and Dangerous Drug Information System (NADDIS). NADDIS contained information that this individual had been investigated in the past in connection with trafficking large quantities of marijuana.

While the officer maintained surveillance on the motel room and vehicle, he saw the individual check on his vehicle at least three times in a very short period and look around as though he were awaiting the arrival of someone else. The officer testified that the individual appeared quite nervous.

The officer then saw a man (later identified as defendant) approach the motel on foot, walk past the room under surveillance very slowly, pause, and then return to knock on the room door. The officer next saw a transfer of something to defendant from the individual in the room, after which defendant proceeded to unlock the room occupant's vehicle and drive away. The officer radioed for uniformed officers to stop the vehicle and ascertain the identity of the driver.

Based on these facts and contrary to defendant's contention, we agree with the trial court that the officer had reasonable suspicion that defendant was engaged in drug trafficking sufficient to justify the investigatory stop.

## II.

■ Defendant next contends the trial court erred in allowing improper expert testimony from a police detective who was not involved in defendant's arrest. We disagree.

As part of its case-in-chief, the prosecution called a narcotics detective to testify as an expert witness. Without objection from defendant, the prosecution qualified the detective as an expert in the field of investigation and narcotics investigation. On direct examination, the detective explained to the jury the primary method drug traffickers use to transport drugs into Colorado by vehicles, which included testimony regarding the use of "mules" or couriers. He also testified that, in his experience, these couriers generally know they are transporting drugs.

On cross-examination, the witness testified that it was possible a courier would not know what he or she was carrying or not be aware he or she was carrying anything, but the detective could not recall a situation where that had occurred.

On direct examination, the prosecutor questioned the detective about the use of consent searches, which drew a defense objection that the testimony was beyond the witness' expertise. The court overruled the objection and allowed an inquiry of the general area, but did not preclude defendant from objecting to specific questions. The witness then testified that people suspected of transporting drugs frequently consent to searches even though they know they have drugs in their possession.

As to the reason for such consent, the witness explained that: "It happens a lot. We talk to people and we explain why we're there, and . . . most of it is self-resignation, yes, I'm caught, or else people just do it even though there [are] drugs there."

Defendant did not further object to the detective's testimony, but pursued the issue. On cross-examination, in response to a question, the detective testified that 90 percent of the time individuals will consent to a search even if they know drugs are present.

The witness also testified to his familiarity with the location where defendant was arrested as a frequently used area for drug transfers, and explained the practice of using confidential informants to gain information about drug traffickers.

We initially note that defendant did not object to the detective's testimony on the grounds he now asserts on appeal. Defendant's only objections at trial concerning the detective's testimony were that portions of it were irrelevant and beyond the scope of the witness' expertise. Thus, we review any error under the plain error standard. *See* Crim. P. 52(b); *People v. Hampton,* 746 P.2d 947 (Colo.1987)(failure to object in district court on grounds asserted on appeal is deemed to waive the objection unless the alleged error rises to plain error).

Additionally, a trial court has broad discretion under CRE 702 whether to allow expert witness testimony in criminal cases, and an exercise of that discretion will not be overturned absent a showing of manifest error. *People v. Fasy,* 829 P.2d 1314 (Colo.1992).

A drug courier profile is an informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics. *United States v. Webb,* 115 F.3d 711 (9th Cir.1997), *cert. denied,* 522 U.S. 974, 118 S.Ct. 429, 139 L.Ed.2d 329 (1997).

In *People v. Salcedo,* 985 P.2d 7 (Colo.App. 1998) (*cert. granted,* May 10, 1999), a division of this court held that the use of drug courier profiles as substantive evidence of guilt was improper. The court found the improper inference from such testimony is that "defendant is a drug smuggler because his or her behavior or appearance was similar to that exhibited by drug smugglers who have been previously encountered." *People v. Salcedo, supra,* 985 P.2d at 10.

Although the expert testimony in this case admittedly involves some overlap with drug courier profile evidence, it is not the same. Drug courier testimony focuses on specific characteristics that are identified with drug dealers, but which also may be possessed by many innocent persons. In contrast, the focus of the expert testimony here was to inform the jury of information they would not normally possess about the *"modus operandi."* of those who generally engage in drug trafficking.

In federal courts, law enforcement agents may testify as experts concerning the *modus operandi* of drug dealers because that is "not something with which most jurors are familiar." *United States v. White,* 890 F.2d 1012, 1014 (8th Cir.1989). *See United States v. Webb, supra; United States v. Gil,* 58 F.3d 1414 (9th Cir.1995), *cert. denied,* 516 U.S. 969, 116 S.Ct. 430, 133 L.Ed.2d 345 (1995)(not abuse of discretion to admit expert testimony establishing drug traffickers' *modus operandi* ).

After reviewing the trial record, we conclude that the detective's testimony here concerned the *modus operandi* of drug traffickers transporting drugs into Colorado and did not concern specific characteristics that are assertedly stereotypical of a drug courier. Therefore, the trial court did not abuse its discretion in admitting the expert testimony.

### III.

We also reject defendant's related contention that the prosecutor's comments during closing argument constituted reversible error.

■ The prosecutor made a brief statement during closing argument based on the detective's testimony that defendant had consented to the car search. The prosecutor stated:

> Of course, he gives consent to search. Why? It's commonly given. You have to sort of—[the detective] doesn't really know why ... some people give consent, but it happens. That's what this defendant did.

Again, because defendant did not object to this statement, we review the comments for plain error, *see People v. Hampton, supra,* and we conclude that this brief statement concerning consent did not constitute such error.

### IV.

■ Defendant next contends, and the People agree, that the judgment of conviction

and sentence for possession with intent to distribute 28 grams or more of cocaine must be vacated because no such offense existed. We also agree.

Defendant was convicted of possession with intent to distribute a controlled substance, possession with intent to distribute 28 grams or more of a controlled substance, and possession of a controlled substance pursuant to Colo. Sess. Laws 1992, ch. 71, § 18–18–405 at 356–57, and sentenced on each offense. However, possession of 28 grams or more of cocaine is not a separate offense, but rather triggers a mandatory sentencing provision. Therefore, defendant's conviction and sentence for such "offense" cannot stand. *See People v. Salcedo, supra.*

The judgment of conviction and the mandatory sentence imposed for possession with intent to distribute 28 grams or more of a controlled substance are vacated, and the mittimus shall be corrected accordingly. In all other respects, the judgment is affirmed.

Judge TAUBMAN and Judge ROY concur.