**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**James GAY, Defendant–Appellant.**

**No. 98CA1517.**

Colorado Court of Appeals, Div. III.

Feb. 3, 2000.

As Modified on Denial of Rehearing April 20, 2000.

---

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, James Gay, appeals the judgment of conviction entered upon a jury ver-

dict finding him guilty of unlawful distribution of a controlled substance (crack cocaine). We reverse and remand for a new trial.

A police officer stopped the car in which defendant was riding as a passenger because the car did not have operational brake lights.

The driver told the police that he had been driving through the neighborhood seeking to purchase crack cocaine when defendant had flagged him down. According to the driver, defendant said that he could obtain crack cocaine, got into the car, and directed the driver to the parking lot of a nearby supermarket. The driver parked in the lot, gave defendant a one hundred dollar bill, and waited until defendant returned with the crack cocaine.

Defendant was arrested on the basis of the driver's statements. At the time of his arrest, defendant had a one hundred dollar bill in his possession.

Prior to trial, defendant filed a motion to suppress, as involuntary, certain statements which the police alleged he had made in a post-arrest interview. At the evidentiary hearing on that motion, defendant testified that the interviewing officer had had him sign a blank "statement" form acknowledging that he had "read the foregoing statement" *before* the officer filled out the form.

Defendant examined the first page of the form bearing his signature and testified that the top of the page accurately reflected his responses to the officer denying that he had provided crack cocaine to the driver of the car. However, defendant testified that he had not made the inculpatory statements which appeared on the bottom half of that page and on a second unsigned page of the form.

The officer testified that the "statement" form contained an accurate transcription of his interview of defendant, though he admitted it was possible that he had had defendant sign the form before the interview when it was still blank.

The trial court found that the officer had employed a "highly irregular" and "foolish" procedure by having defendant sign a blank statement form. The trial court found that the People had not proven the voluntariness of the inculpatory statements by a preponderance of the evidence because they had failed to prove that defendant actually made the inculpatory statements which the officer attributed to him. Accordingly, the court suppressed the inculpatory statements.

## I.

■ Defendant argues that the trial court erred when it subsequently ruled that his trial testimony could be impeached with the previously suppressed inculpatory statements. We agree.

After defendant's first trial ended in a hung jury, the prosecutor filed a motion seeking to use the suppressed portion of defendant's "statement" for impeachment purposes if defendant elected to testify at his second trial. As grounds, the prosecutor alleged:

> The Court did not find that there was a violation of *Miranda* or that the statement was involuntary, but rather that the Court disapproved of the [officer's] method of recording the statement to the extent that the Court could not find by the preponderance of the evidence that the statement was actually made.

At a hearing on the motion, the prosecutor stated: "It appeared to me that the Court ruled the statement was voluntary." Inexplicably, defense counsel did not object to this mischaracterization of the trial court's earlier ruling. The trial court, without making reference to the pre-trial ruling it had entered ten weeks before, stated that the suppressed statements could be used for impeachment purposes.

The second trial was conducted before a different judge who advised defendant that, if he chose to testify, he would be subject to impeachment with the suppressed portion of the statement. Defense counsel did not object to the court's advisement. Defendant did not testify.

■ Because defendant never objected to the impeachment use of the previously suppressed statements, our review of the issue on appeal is governed by a plain error standard. Under that standard, reversal is not

required unless the error casts serious doubt upon the basic fairness of the trial itself. *Wilson v. People,* 743 P.2d 415 (Colo.1987).

■ A criminal defendant's confession is not admissible into evidence for any purpose, including impeachment, unless it was made voluntarily. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *People v. Cole,* 195 Colo. 483, 584 P.2d 71 (1978).

■ A defendant who seeks to prohibit the prosecution from introducing an allegedly involuntary confession into evidence is entitled to a judicial determination in advance of the trial of whether the statement is in fact involuntary and therefore inadmissible. *Jackson v. Denno, supra; Kwiatkoski v. People,* 706 P.2d 407 (Colo.1985).

■ At such a hearing, the burden of proof is on the prosecution to establish by a preponderance of the evidence that the defendant voluntarily made the statements at issue. The preponderance standard requires the fact finder to determine whether the existence of a contested fact is more probable than its nonexistence. *People v. DeBaca,* 736 P.2d 25 (Colo.1987).

Here, the first judge heard the sharply conflicting testimony of the interviewing officer and defendant at the pre-trial suppression hearing and found that the People had failed to meet this burden. Because the court concluded the People had not proven that defendant made the statements, it did not reach the question of whether the statements were voluntary.

■ The judge who made that finding was free to modify it as a matter of discretion. *People v. Dunlap,* 975 P.2d 723 (Colo. 1999)(when applied to a court's power to reconsider its own prior rulings, the law of the case is a discretionary rule of practice). However, the record indicates that the judge did not modify the finding. Rather, it appears the court simply forgot its earlier ruling on the motion to suppress and, in the absence of any objection from the defense, relied on the prosecutor's mischaracterization of the court's prior findings.

Significantly, the People do not dispute that this is what happened. Instead, the People argue that the trial court's initial ruling was wrong because the court erroneously analyzed the issue of whether defendant made the inculpatory statements as a preliminary question of admissibility under CRE 104(a) rather than as a preliminary question of conditional relevancy under CRE 104(b). We are not persuaded.

CRE 104(a) addresses situations in which preliminary questions concerning the admissibility of evidence depend upon the application of policy considerations, such as those relating to the protective policies of exclusionary rules. In contrast, preliminary questions of conditional relevancy under CRE 104(b) are questions of probative force rather than evidentiary policy. *People v. Garner,* 806 P.2d 366 (Colo.1991).

■ The People note, and we recognize, that in *Burlington Northern R.R. Co. v. Hood,* 802 P.2d 458 (Colo.1990), our supreme court concluded that a question concerning whether a witness had made a particular prior inconsistent statement was a preliminary question of conditional relevancy under CRE 104(b). Questions of conditional relevancy are determined by the jury unless the evidence was manifestly insufficient to sustain a reasonable finding that the statement had been made.

Here, however, *Burlington Northern* is not applicable because there was insufficient credible evidence that the statement at issue was made by defendant.

■ A criminal defendant's statements must be suppressed when the People fail to prove by a preponderance of the evidence that they were voluntarily made, because that exclusion of the evidence advances the legitimate protective policy of discouraging coercive police conduct. *Jackson v. Denno, supra.* Hence, it is impossible to determine the voluntariness of a defendant's statements without first determining if they were in fact made. Therefore, the trial court must make the preliminary inquiry of whether the statements were made before determining voluntariness pursuant to CRE 104(a).

Here, the record supports the trial court's initial finding that the People failed to prove

defendant made the inculpatory statements attributed to him in the written "statement" prepared by the interviewing officer. That finding was reversed due to inadvertence and not as the result of a sound exercise of trial court discretion. This was error.

The People suggest this error could not have interfered with defendant's decision whether to testify because he undoubtedly would have remained silent in order to avoid being impeached with his two prior felony convictions. We reject this argument because, as set forth below, the People concede the trial court did not properly advise defendant that, if he testified, his prior felony convictions would be introduced for the limited purpose of impeaching his credibility.

We also reject the People's speculation that defendant would not have testified because he did not do so at his first trial which ended in a mistrial. This argument presumes, wrongly, that defendant was not free to change his trial strategy and testify at the second trial.

We are convinced that the trial court, by unintentionally reversing its prior ruling, placed defendant in the untenable position of having to choose between forfeiting his right to testify or risking impeachment with inculpatory statements, which the People had failed to prove he had voluntarily made. This error raises serious questions about the fairness of the trial, especially since the People's case rested entirely on the testimony of the driver, a twice-convicted felon who obtained a deferred judgment for his actions in this case. Accordingly, we conclude the error rises to the level of plain error such that defendant's conviction must be reversed.

## II.

Defendant next asserts, and the People concede, that the trial court neglected to explain that if he elected to testify, evidence of his prior felony convictions would be admissible for the limited purpose of impeaching his credibility. We agree that the trial court's advisement did not meet the minimum requirements of People v. Curtis, 681 P.2d 504 (Colo.1984), and People v. Blehm, 983 P.2d 779 (Colo.1999). However, in light of our disposition of defendant's first claim, no purpose would be served by ordering further proceedings of the type outlined in People v. Blehm, supra, to determine if defendant had obtained this information elsewhere.

## III.

Because the issue is likely to arise again upon retrial, we address defendant's claim that the trial court erred in allowing a police officer called as an expert witness to testify that defendant's conduct matched a "drug courier profile." We conclude the testimony was proper.

A drug courier profile is an informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics. In People v. Salcedo, 985 P.2d 7 (Colo.App. 1998) (cert. granted May 10, 1999), a division of this court held that the use of drug courier profiles as substantive evidence of guilt was improper. The Salcedo court reasoned that drug profiles give rise to an improper inference that the defendant is a drug smuggler because the defendant's behavior or appearance is similar to that exhibited by drug smugglers whom the officer has previously encountered.

In People v. Ramirez, 1 P.3d 223 (Colo. App.1999), another division of this court held that a trial court acted within its discretion in admitting expert testimony informing the jurors of information they would not normally possess about the modus operandi of those who generally engage in drug trafficking. The division distinguished People v. Salcedo, supra, concluding that the detective's testimony concerning how drug traffickers transport drugs into Colorado did not concern specific characteristics that are assertedly stereotypical of a drug courier.

Here, a police officer with many years of experience in the investigation of crack cocaine cases was qualified, without objection, as an expert with regard to the sale, packaging, and distribution of crack cocaine. The officer was not involved in defendant's arrest, though he was familiar with the neighborhood in which the transaction allegedly occurred.

The officer testified that this predominantly African–American neighborhood had a high concentration of crack cocaine dealers and that a Caucasian stranger from outside the area, such as the driver in this case, would have difficulty making a purchase without the assistance of a "runner" to act as an intermediary. The officer further testified that, based on his review of the police reports in this case, defendant's actions were consistent with those of a runner.

We conclude the officer's expert opinion that defendant's alleged actions were consistent with those of a runner was not drug courier profile evidence drawing an inference of guilt based on innocent activities. Rather, the essence of the officer's testimony was that if defendant in fact sold cocaine in the manner alleged by the driver, then his actions were consistent with those of drug runners in the neighborhood. This testimony did not create any improper inferences. It merely provided information to the jurors concerning a subject with which they were likely unfamiliar. *See People v. Ramirez, supra.*

To the extent that defendant challenges the officer's testimony on the ground that it unfairly emphasized the issue of race, he must bring that issue to the attention of the trial court on retrial by means of a timely objection. Whether such testimony is unfairly prejudicial is a determination to be made in the first instance by the trial court. CRE 403.

The judgment of conviction is reversed, and the cause is remanded for a new trial.

Judge JONES and Judge TAUBMAN concur.