# COURT OF APPEALS.

## April, 1920.

## ·THE PEOPLE v. JOHN J. JOHNSTON.

### (228 N. Y. 332.)

(1) EVIDENCE—RELEVANCY.

The test of relevancy is whether or not the inference which it is sought to have drawn from the testimony is a fair one. If it is, the test of relevancy is satisfied. It is not necessary that it should be conclusively relevant.

(2) SAME—LETTER WRITTEN TO DEFENDANT BY PERSON INDICTED FOR A CRIME IN ACCORDANCE WITH WHICH DEFENDANT FURNISHED MONEY FOR AN UNLAWFUL PURPOSE.

Letters written by one person to another, without anything more, are of no probative value as to the credulity of the recipient or his acquiescence in the schemes contained therein. When, however, the recipient acts in compliance with the scheme outlined in the letter and admits that his action was in furtherance of the purpose of the writer, by his own acts and admission he has adopted the scheme and purpose of the letter-writer as his own, and his credulity as a witness may depend on the quality of the act accomplished or sought to be accomplished through his aid and with his acquiescence. Such a letter then becomes material and is admissible.

(3) SAME—WITNESS—CROSS-EXAMINATION OF DEFENDANT WHO BECAME WITNESS IN HIS OWN BEHALF—LETTER ADMISSIBLE FOR CONSIDERATION OF JURY, AS TO CREDIBILITY OF DEFENDANT AS A WITNESS.

The defendant, on trial for forgery, was a witness in his own behalf. On cross-examination he identified a letter which he admitted he had received from a man in jail, awaiting trial apparently for a serious offense in which he stated he wanted to obtain two witnesses who would give testimony to aid him in his defense, and, as he puts it, "to beat his case" which will also be of benefit to the defendant as it will "beat" the case against him likewise. An inference may be drawn from the letter that money asked for was to buy the testimony or was to pay the witnesses to commit perjury. Defendant admitted the sending of the money and said it was for the purpose indicated in the letter. It thus became an admission made by the defendant as though he had himself written his purposes and signed it. The fact sought to be established was the admission by defendant that he was perfectly willing to send money for an improper or illegal purpose. The court having held that

the letter did not prove that the defendant had forged or passed the checks involved, it was a fact that might be brought to the attention of the jury on the question of his credibility as a witness. It was for the jury to say whether the transaction was capable of an innocent interpretation.

People v. Johnston, 186 App. Div. 248, reversed.

APPEAL from an order of the Appellate Division of the Supreme Court in the First Judicial Department, entered February 7, 1919, which reversed, for errors of law only, a judgment of the Court of General Sessions of the Peace in the county of New York rendered upon a verdict convicting the defendant of the crime of forgery in the second degree and granted a new trial.

The facts, so far as material, are stated in the opinion.

*Edward Swann, District Attorney* (*Robert S. Johnstone* of counsel), for appellant. The admission of the letter in evidence was not error. (I. C. Comm. v. Baird, 194 U. S. 25; People v. Richardson, 222 N. Y. 103; People v. Webster, 139 N. Y. 73; People v. Mullen, 163 N. Y. 312; People v. Tice, 131 N. Y. 651; Chamberlayne on Ev., §§ 448, 523; People v. Dorthy, 156 N. Y. 237; Stokes v. Johnson, 57 N. Y. 673.) The hearsay rule has no application. (Phillips on Ev. [5th ed.], *170, *185; Greenleaf on Ev. [16th ed.], § 100; Phipson on Ev. [4th ed.], 200; Wigmore on Ev., § 1768; Powell on Ev. [9th ed.], 92, 246; People v. Hughson, 154 N. Y. 153; Trischet v. Hamilton M. I. Co., 14 Gray, 456; People v. De Garmo, 179 N. Y. 130; People v. Lawrence, 137 N. Y. 517; People v. Cosino, 205 N. Y. 95.) The " credibility character " of the defendant as a " witness " was " at issue " in the case and the evidence received was relevant to that issue. (Wigmore on Ev., §§ 55, 56, 59, 61, 889, 890, 2277; People v. Tice, 131 N. Y. 651; People v. McCormack, 135 N. Y. 663; People v. Webster, 139 N. Y. 73; People v. De Garmo, 179 N. Y. 130; People v. Hinksman, 192 N. Y. 421; People v.

Rosenheimer, 209 N. Y. 115; People v. Richardson, 222 N. Y. 103; People v. Trybus, 219 N. Y. 18; Connors v. People, 50 N. Y. 240.)

*Clark L. Jordan* for respondent.    The trial court erred in admitting the letter in evidence.    (People v. Johnston, 186 App. Div. 248; Willet v. People, 27 Hun, 469; Wharton's Cr. Ev., §§ 644, 682; 1 Greenleaf on Ev., § 124; Reg. v. Palmer, Rus. & Ry. 644.)

ELKUS, J.:

The defendant was convicted of uttering a forged one hundred dollar American Express Company check which had been issued by the company to one Emil Robitzek.    The counter-signature of Robitzek was a forgery.    The check was one of a series of twelve, each for the same amount, which had been purchased by Robitzek from the express company in June, 1913.    None had been countersigned by him, but they were lost or stolen within a day or two after their purchase.    The defendant had possession of ten of these checks.    He himself passed five of them on October 7, 1916, in five different stores by making a small purchase of goods, receiving the remainder in cash.    His wife passed the other five checks the same day in a similar manner.

The defendant testified as a witness in his own behalf.    He testified that he was not a professional gambler, but that he played a great deal of poker and claimed to have won the checks playing cards.    During the course of his cross-examination, he was asked if he knew one Leo Stein, and answered in the affirmative.    He then testified that he had sent Stein money, at first $75, which he corrected to $50.    This was sent in response to a letter received by him and which he identified when shown to him.    He then was asked, " For the purposes indicated in this letter? " to which he replied in the affirmative, the objection of his counsel as to materiality having been overruled.    The

letter was then offered in evidence.    The court stated, " I will allow it," but then directed that the letter be marked for identification and that the district attorney might put questions to the witness based upon the letter.

Further questions were asked and then the court, at the request of the district attorney, read the letter which was again offered in evidence and it was then admitted in evidence. Objection was made by the defendant that there was no theory of law under which the letter was admissible, or any single feature of it.    The trial court ruled that the letter was admissible because the defendant stated that he had received it and acted upon it and it was for the jury to say whether or not the letter indicated a criminal, vicious or immoral purpose, and that if it did not, it was not binding upon him (the defendant). The trial court made clear that the letter did not prove that the defendant had forged or passed the checks involved, but that the jury were entitled to know what kind of a man the witness (defendant) was, and while an arrest meant nothing, even criminal and vicious acts which did not result in a conviction may be called to the attention of a witness on the question of his credibility, and that association with criminals with knowledge of their character was a fact that might be brought to the attention of the jury on the question of his credibility as a witness.

The Appellate Division reversed the conviction on the sole ground that there was error of law in the admission of this letter in evidence.    That court held that when a defendant takes the stand in his own behalf he subjects himself to cross-examination to the same extent as any other witness, and thus may be interrogated with regard to any criminal or vicious act of his life and that the extent of such cross-examination is within the sound discretion of the trial court, yet such examination should tend to show that the witness was not entitled to belief, but that the letter in question was neither relevant nor material; that different inferences might be drawn from it;

that to receive the letter in evidence was to receive hearsay when direct evidence would not have been allowed, and that the trial court, in its charge, had placed an improper construction upon the letter as to the inferences that might have been drawn from it.    These errors, the Appellate Division stated, were highly prejudicial.

The People claim that the evidential fact was the act of the defendant—that is, his sending money to the writer of the letter in response to it, and, as the defendant testified, for the purposes indicated in the letter.    The purpose for which the money was sent was what determined the quality and nature of the defendant's act, and that the quality of the act could be ascertained only by reference to the letter, in response to which and for the purposes indicated in it, the defendant conceded he sent the money.    To show the quality of this act, the letter was a necessary piece of evidence.    (People v. Hughes, 137 N. Y. 29, 30, 19 N. Y. Crim. 277.)

Mere letters written by. one person to another, without anything more, are of no probative value as to the credibility of the recipient or his acquiescence in the schemes contained therein.    When, however, the recipient acts in compliance with the scheme outlined in the letter and admits that his action was in furtherance of the purpose of the writer, by his own acts and admission he has adopted the scheme and purpose of the letter-writer as his own, and his credibility as a witness may depend on the quality of the act accomplished or sought to be accomplished through his aid and with his acquiescence.    Such a letter then becomes material and is of great importance.

Had the accused denied sending the money or taking any action in response to the letter of Leo Stein, the letter would have been *clearly* inadmissible.    The prosecution would have been bound by the defendant's answer.

When, however, the defendant, without objection, admits that he acted on the letter, there the purpose of his act becomes material.    In response to the inquiry, did he forward the

money for the purposes indicated in this letter, the defendant answered, " Yes."      By his answer he adopted the letter as expressing his purpose for sending the money.      Defendant could have explained his purpose or the purposes set forth in the letter so as to claim his act to have been perfectly proper and such as should not affect his credibility.      He did not attempt any explanation, although his opportunity was ample. Having, by his testimony, adopted the letter as to its purposes, it became an admission made by the defendant just as though he had himself written his purposes and signed it.      It was the duty of the jury to spell out the purpose as set forth in the letter and to decide as to how that purpose affected the credibility of the defendant as a witness.      This was clearly set forth by the trial court.      The decision of the jury, unless clearly against the evidence, must be conclusive as to facts.

We refer briefly to the contents of the letter to gather the purpose of the defendant.      The writer tells the defendant, whom he addresses on terms of intimacy, that he is in jail; his trial set for January 15th; he is " flat broke " and if he could " beat his case," it would " clean " the defendant also. He then states : " I believe I can beat my case if I had a couple of witnesses.      I have advertised for weeks, and have had no return from that full car.      I was just about discouraged, when a kindly act found two witnesses whose evidence should clear me.      But they require no less than $25 apiece, or no less than $50.      Fifty dollars for both of them."

The letter then proceeds to say that he had been told that with his " priors " he would receive life if he was found guilty by a jury and had been told that if he stood trial he ought to expect the limit after ungratefully running away, but that if he would plead guilty, the " priors " would be withdrawn and he would receive ten years.      The letter then goes on : " Now I am awfully lucky to have found two witnesses and Jim " (*the defendant*) " it would be an awful shame to have to go to trial without them for the sake of fifty dollars.      It is of great

material benefit for you to have Bejington made a liar in my case and to win my case is to win yours.    Therefore, Jim, for God's sake, beg, borrow or steal this $50 and send it by wire at once, for time is valuable and I am to be tried on January 15, 1914."

The letter then proceeds to say that if the defendant fails him for mercenary motives he is lost as he knows no one else, and that if the defendant fails him he will never have a day's luck and " then you who are in on the fall have let me go to the stir for the sake of $50."    And again:  " However, you may be brought back here and these witnesses may have beat both our cases."

It is difficult to perceive how any innocent purpose can be attributed to this letter, although the question was properly left with the jury.    The defendant received a request from a man in jail, awaiting trial apparently for a serious offense, in view of the sentence he expected to receive if he pleaded guilty, which is stated in his letter, and wants to obtain two witnesses who will give testimony to aid him in his defense and, as he puts it, " to beat his case " which will also be of benefit to the defendant as it will " beat " the case against him likewise.

While he does not specify the purposes for which the $50 is to be used, it is quite clear that an inference may be drawn from the letter that it was to buy the testimony or was to pay the witnesses to commit perjury.    The defendant makes no other explanation.    It is not claimed in the letter that the witnesses are experts.    In fact, quite the contrary is stated, and expert witnesses are the only ones who may be paid for their services.    Subpœna fees are provided by the government of the state or city for witnesses to cover traveling expenses and no inference may be drawn from a naked request for money to procure two witnesses except an improper one.

The Appellate Division says the letter in question might be susceptible of an innocent interpretation.    This is exceedingly doubtful, and in any case it was a matter for the jury to deter-

mine whether the letter was sent for a proper purpose. The trial court gave proper directions stating that if the letter was sent for a proper purpose, the jury should give it no weight at all, at the same time explaining to the jury the limited purposes for which the evidence was received. The evidence was material and relevant. The test of its relevancy is whether or not the inference which it is sought to have drawn from the testimony is a fair one. If it is, the test of relevancy is satisfied. (Wigmore on Evid., §§ 27, 32, 38.) It is not necessary that it should be conclusively relevant. (Interstate Commerce Comm. v. Baird, 194 U. S. 25, 44.)

The letter was not received as evidence itself, or to prove the truth of the matters asserted in it. The fact which was sought to be established was the admission by the defendant that he was perfectly willing to send money for an improper or illegal purpose. He admitted the sending of the money and said it was for the purposes indicated in the letter. It then became necessary to show the nature and quality of what was to be done in accordance with the letter, for which the defendant had sent the money. The interpretation of the defendant's purpose from the terms of the letter was for the jury, just as though the defendant had made the statements contained in the letter to the jury to explain his purpose and this was done.

The letter was not admissible to prove that the defendant was guilty of another crime and it was not offered for that purpose. The position of a defendant is far different when he becomes a witness in his own behalf than when he does not and stands upon his right to refuse to testify. He is surrounded with safeguards, but by becoming a witness the defendant puts his credibility in issue as does any other witness. He may be subjected to the same cross-examination as any other witness. He may be questioned and compelled, unless he claims his privilege, to disclose any vicious or criminal act of his life for the purpose of impeaching his credibility in his capacity as a witness. (People v. Tice, 131 N. Y. 651; People v. McCor-

mick, 135 N. Y. 663, 664; People v. Webster, 139 N. Y. 73; 84; People v. DeGarmo, 179 N. Y. 130, 134; People v. Hinksman, 192 N. Y. 421, 432, 433; People v. Rosenheimer, 209 N. Y. 115, 123; People v. Richardson, 222 N. Y. 103, 107; Wigmore on Evid., §§ 61, 889, 890, 2207.)

When a defendant takes the witness stand in his own behalf, he waives the constitutional privilege against compulsory self-incrimination.   (People v. Trybus, 219 N .Y. 18; People v. Rosenheimer, 209 N. Y. 115, 123.)   It is true that this waiver probably extends only to matters that are relevant to the charge on trial; that is, not to collateral matters, that is, facts affecting merely credibility (Wigmore on Evid., § 2276; People v. Webster, 139 N. Y. 73, 84), but unless the privilege is claimed a witness who may be the defendant at the same time may, like any other witness, be compelled to testify to specific acts for the purpose of affecting his credibility as a witness.   (People v. DeGarmo, 179 N. Y. 130, 134.)   In the instant case there was no claim of privilege.

The cases referred to in the Appellate Division opinion, referring to proof of other crimes, are not applicable here. The letter was not admitted as evidence of another crime, but evidence attacking the credibility of the defendant as a witness. In his charge to the jury the trial court properly left this question to the jury to decide.

The judgment of the Appellate Division should be reversed, and that of the trial court affirmed.

McLAUGHLIN, J. (dissenting) :

I dissent and vote to affirm the judgment appealed from on the opinion of Mr. Justice Page at the Appellate Division (186 App. Div. 248).

HISCOCK, Ch. J., CARDOZA and CRANE, JJ., concur with ELKUS, J.; McLAUGHLIN, J., reads dissenting memorandum; CHASE and HOGAN, JJ., dissent generally.

Judgment reversed, etc.