**The PEOPLE of the State of Colorado, Petitioner**

v.

**Stephen SKUFCA, Respondent.**

No. 06SC34.

Supreme Court of Colorado, En Banc.

Feb. 4, 2008.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Petitioner.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, Attorneys for Respondent.

Justice RICE delivered the Opinion of the Court.

## I. Facts and Procedural History

In September 2000, Respondent Stephen Skufca was charged with possession of drug paraphernalia, including contraband, in the first degree, possession with intent to distribute marijuana, and possession with intent to distribute methamphetamine. Skufca pled not guilty and went to trial, but his first trial ended in a mistrial because of a discovery violation. Following a second jury trial, Skufca was convicted of possession of methamphetamine and of more than one but less than eight ounces of marijuana, but the jury did not find that he possessed those drugs with the intent to sell them. He was also convicted of introduction of contraband and possession of drug paraphernalia, and he was later adjudicated a habitual criminal. On appeal, the court of appeals reversed Skufca's convictions and remanded for a new trial, holding that the trial court impermissibly violated Skufca's right to testify by admitting evidence of prior related drug transactions. *People v. Skufca,* 141 P.3d 876, 879, 881 (Colo.App.2005).

The People appealed the court of appeals' reversal of Skufca's conviction, and we granted certiorari on the question of whether the court of appeals erred in concluding that the admission of res gestae evidence in the prosecution's case-in-chief impermissibly burdened Skufca's right to testify because the evidence related to charges pending in another case. Upon review, we disagree with the court of appeals and therefore reverse its ruling.

Officers discovered the evidence leading to Skufca's convictions after Skufca was arrested on a warrant for traffic offenses. During a search incident to arrest, officers recovered three $100 bills on his person, and in his car they found a bag with 2.86 grams of methamphetamine, two bags containing a total of 33.35 grams of marijuana, a small scale, and a shortened plastic pen tube containing drug residue. During a search at the jail, officers also found two phone numbers written on a crumpled-up paper containing trace amounts of methamphetamine.

Unbeknownst to Moffat County police at the time of the arrest, Skufca was a subject of a federal investigation by the Drug Enforcement Administration ("DEA"). Earlier on the day of his arrest, Skufca had helped a man whom he believed to be a drug dealer— but who was actually an undercover DEA agent—purchase 9.6 grams of methamphetamine and one pound of marijuana from two unnamed sources. As payment, Skufca received about two grams of methamphetamine and about one half of an ounce of marijuana.

The telephone numbers on the paper found during the jail search belonged to the DEA agent, and the drugs found in the searches were the same type as those involved in the purchases. In addition, the $100 bills bore the same serial numbers as those previously possessed by the DEA agent. The federal government filed separate charges for the two earlier drug transactions, and those charges were pending during Skufca's trial in this case.

Before the first trial in the case at hand, the People submitted a memorandum arguing for the admission of evidence of the drug transactions that had occurred earlier in the day. The People argued that the evidence was admissible as res gestae evidence because it went to whether Skufca knowingly possessed the drugs, and it helped explain Skufca's possession of the $100 bills. The court rejected the defense's arguments that the evidence was character evidence and was thus inadmissible under CRE 403. The court ruled that "in order to understand the circumstances surrounding this arrest and the possession, the jury has a right to and should hear what had occurred that day. It is closely connected to the events surrounding the arrest, and the Court is going to go ahead and admit it."

Skufca then argued that if he chose to testify, he should be permitted to assert his Fifth Amendment privilege if the People cross-examined him about the earlier drug transactions. The court ruled that the scope of Skufca's cross-examination would depend on the scope of his direct examination.[1] For instance, the court stated that if Skufca denied during direct examination that the earlier drug transactions took place, the People would be permitted to cross-examine him about that denial. The trial court applied those evidentiary rulings in the second trial as well.

In their case-in-chief, the People presented testimony about the earlier drug transactions. Afterward, the court gave Skufca a *Curtis* advisement and asked Skufca whether he wished to testify. *See People v. Curtis*, 681 P.2d 504, 514 (Colo.1984). Skufca responded, "I have no other choice but to not testify considering the fact that the federal case has been brought—that you've allowed the federal case to be brought into this case. I have no other alternative but not to testify because of that." Thus, Skufca declined to take the stand.

## II. Analysis

■ The United States and Colorado constitutions afford a criminal defendant the right to testify on his or her own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987) (citing U.S. Const. amends. V, VI, XIV); *Curtis*, 681 P.2d at 509–10 (citing Colo. Const. art. II, § 25). In addition, both constitutions afford a criminal defendant the right against incriminating him or herself at trial. *Ohio v. Reiner*, 532 U.S. 17, 20, 121 S.Ct. 1252, 149 L.Ed.2d 158 (2001) (citing U.S. Const. amend. V); *See People v. Schneider*, 133 Colo. 173, 179, 292 P.2d 982, 986 (1956) (citing Colo. Const. art. II, § 18). Skufca argues that he was illegally forced to forego his right to testify on his own behalf in order to exercise his right against self-incrimination.

■ A defendant's right to testify on his own behalf is impermissibly burdened when the court imposes a price for its exercise. *People v. Myrick*, 638 P.2d 34, 38 (Colo.1981). If Skufca is correct that the trial court would not allow him to testify without giving up his right against self-incrimination, then he has a

---

1. The record makes clear that this was the trial court's ruling. After ruling that the evidence was admissible, the court stated:

 I don't know about the case law which suggests that somehow a person doesn't have to face that dilemma when they are charged with crimes.... He has to make up his mind. If he wants to answer all the questions that may be asked, then I think you can go into the whole area, what happened that day, what was going on there.

In addition, the People expressed concern that the jury would believe that the People forgot to ask Skufca about the prior drug transaction evidence if Skufca were to take the stand but fail to bring up the topic during direct examination. The People requested that the court instruct the jury that the People are limited during cross-examination "to the scope of the matters that are addressed on direct examination."

strong argument that the court impermissibly imposed a price for his right to testify. If, however, Skufca could have chosen to testify on his own behalf without diminishing his right against self-incrimination, then there was no impermissible burden on his right to testify on his own behalf. Consequently, our analysis of whether Skufca's right to testify on his own behalf was unconstitutionally burdened centers on the impact of the trial court's ruling on both Skufca's right against self-incrimination and his right to testify on his own behalf.

In analyzing the impact of the trial court's ruling on Skufca's rights, we look to three potential arguments that may support Skufca's position. First, we consider the application of Colorado cases which hold that a defendant's right to testify on his own behalf is sometimes infringed when a court erroneously rules that certain evidence is admissible against him. Second, we look to cases from other jurisdictions, relied upon by the court of appeals, to determine whether the rationales of those cases would compel a finding of unconstitutionality if we were to adopt them here. Last, we determine whether any other legal doctrine supports a finding that Skufca's rights were violated by the admission of the prior drug transaction evidence in the People's case-in-chief or by the ruling that the evidence could be used during Skufca's cross-examination to the extent that Skufca opened the door to it.

## A. Colorado Cases Finding an Infringement of the Right to Testify Due to Improperly Admitted Evidence Do Not Apply

■ We first consider the application of a line of cases holding that a defendant's right to testify is sometimes infringed when inadmissible evidence against him is erroneously ruled to be admissible. *See, e.g., People v. Evans,* 630 P.2d 94, 96–97 (Colo.App.1981) (stating that the defendant was illegally "forced to forego his right to testify in order to prevent the prosecution from introducing otherwise inadmissible evidence against him as substantive proof of guilt"). This line of cases does not address when the admission of normally *admissible* evidence impermissibly

burdens a defendant's right to testify on his own behalf. Therefore, in order to determine whether this precedent applies, we must first determine whether the prior drug transaction evidence was properly characterized as res gestae evidence, which is normally admissible.

■ Res gestae evidence includes evidence of another offense, which is related to the charge on trial, that helps to "provide the fact-finder with a full and complete understanding of the events surrounding the crime and the context in which the charged crime occurred." *People v. Quintana,* 882 P.2d 1366, 1373 (Colo.1994). Generally, res gestae evidence is linked in time and circumstances to the charged crime, it forms an integral and natural part of the crime, or it is necessary to complete the story of the crime for the jury. *Id.* When evidence is admitted as res gestae evidence, it is not subject to the general rule excluding evidence of prior criminality. *Id.*

In this case, the evidence of the prior drug transactions helped give the jury a more complete understanding of the events surrounding the crime. It helped explain how Skufca might have come into possession of the drugs. In addition, it helped to explain why Skufca had three $100 bills in his possession.

To be admissible, res gestae evidence must also be relevant under CRE 401, which means that it must tend to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable." This evidence is relevant to show that Skufca knowingly possessed the drugs. The drugs found on Skufca were of the same type that the DEA agent testified he gave to Skufca, which suggests that they could be the same drugs. Therefore, the evidence makes it more likely that Skufca knew he was in possession of the drugs that were the subject of the trial.

Because the evidence is relevant and it helped establish for the jury the context and circumstances surrounding the crime with which Skufca was charged, we uphold the trial court's determination that the evidence is res gestae evidence. Consequently, the

line of cases finding an infringement of the right to testify due to improperly admitted evidence does not apply. Unless a different rationale renders the admission of the res gestae evidence unconstitutional, the evidence was properly admitted.

### B. *Betts* and *Tuell* Do Not Provide a Rationale for Holding That the Trial Court Erred

Indeed, the court of appeals purported to rely on a different rationale in ruling that the evidence should have been excluded. The court concluded that "the trial court did not abuse its discretion in admitting the evidence of the morning drug transactions as res gestae, absent the chilling effect on defendant's right to testify." *Skufca,* 141 P.3d at 883. Yet, the court then ruled that the trial court's decision to admit the res gestae evidence impermissibly burdened Skufca's constitutional right to testify in his own defense, and that this error was aggravated by the trial court's refusal to limit the prosecution's cross-examination about that evidence. *Id.* at 881.

The court of appeals reasoned that the trial court's admission of the evidence created an impermissible tension between Skufca's right to testify on his own behalf and his right to remain silent as to the charges pending in federal court. *Id.* at 880. This alleged tension presumably arises because if Skufca had chosen to exercise his right to testify on his own behalf, he would have risked opening the door to questions about his pending federal charges, and therefore having to testify about those charges. In concluding that the trial court impermissibly forced Skufca to give up his right to testify, the court of appeals relied on two cases from other jurisdictions, *People v. Betts,* 70 N.Y.2d 289, 520 N.Y.S.2d 370, 514 N.E.2d 865 (1987), and *State v. Tuell,* 112 Ariz. 340, 541 P.2d 1142

(1975). However, both *Betts* and *Tuell* are distinguishable from the case at hand.

*Betts* is not persuasive because the issue raised in that case differs from the issue here. Additionally, even if the rationale of *Betts* applied to this case, that decision appears to contradict the court of appeals' ruling in the case at hand. In *Betts,* the defendant was on trial for first degree rape, and the trial court ruled in a pre-trial hearing that the prosecution could cross-examine him about a pending unrelated burglary charge. 520 N.Y.S.2d 370, 514 N.E.2d at 865–66. The defendant did not testify, and he was convicted. *Id.* 520 N.Y.S.2d 370, 514 N.E.2d at 866. The New York Court of Appeals held that the trial court erred by ruling that if the defendant chose to testify, he would be deemed to waive his privilege against self-incrimination and be exposed to cross-examination with respect to the pending burglary charge. *Id.* 520 N.Y.S.2d 370, 514 N.E.2d at 865.

The evidence in *Betts* is dissimilar from the evidence in the case at hand because the evidence in Betts was unrelated to the charge on trial, and it was relevant solely to attack the defendant's credibility during cross-examination. *See id.* 520 N.Y.S.2d 370, 514 N.E.2d at 865 (describing the rule of the case as applying to the use of unrelated charges for the purpose of attacking credibility only). Here, on the other hand, the evidence is related to the charge on trial and, constitutional issues aside, it is admissible in the People's case-in-chief as res gestae evidence. The distinction between evidence that is relevant to prove the charge on trial and evidence that is relevant solely to attack credibility is significant, as the *Betts* case itself repeatedly makes clear.[2] Indeed, one case suggests that in the *Betts* jurisdiction, a testifying defendant waives his constitutional privilege against compulsory self-incrimination as to matters that are related to the

---

**2.** The *Betts* court emphasized that the evidence of the pending charges was not related to the charge on trial, and that it was relevant only to attack credibility. 520 N.Y.S.2d 370, 514 N.E.2d at 867 (emphasizing that precedent in *People v. Johnston,* 228 N.Y. 332, 127 N.E. 186 (1920), applies only to matters relevant to the charge on trial and not to facts only affecting credibility); *id.* (noting that the opinion in *Betts* was the court's first opportunity to address when a defendant may refuse to answer questions about collateral matters relevant only to credibility); *id.* 520 N.Y.S.2d 370, 514 N.E.2d at 868 (articulating the rule in *Betts* as stating that "the defendant's choice to testify in the case on trial does not, by itself, effect a waiver of the privilege against self-incrimination as to pending *unrelated* charges" (emphasis added)).

charges on trial, but he may likely refuse to testify about matters that are relevant only to credibility. *Id.* 520 N.Y.S.2d 370, 514 N.E.2d at 867 (quoting *People v. Johnston,* 228 N.Y. 332, 127 N.E. 186, 188 (1920)).

In addition, a statement from the *Betts* decision undercuts the court of appeals' holding in this case that the trial court erred. The *Betts* court indicated that the prosecution could not impeach the defendant's credibility with the contested evidence merely because the defendant took the witness stand. However, the *Betts* court clarified that the prosecution *could* impeach the defendant with that evidence if he were to "open the door and render those charges relevant for contradiction and response." *Id.* 520 N.Y.S.2d 370, 514 N.E.2d at 868. The trial court's ruling in the case at hand is consistent with this statement. The trial court ruled that the evidence about the prior drug transactions could be used during cross-examination only if Skufca opened the door to that line of inquiry during direct. Therefore, under the *Betts* court's reasoning, the trial court did not err.

Similarly, the issue in *Tuell* is different from the issue in the case at hand because in *Tuell,* the relevant question was whether the trial court's error was moot. In *Tuell,* the Arizona Supreme Court determined that the trial court erred when it denied the defendant's motion in limine to bar the use of evidence of an unrelated crime during cross-examination. 541 P.2d at 1147. The *Tuell* court stated that the evidence was inadmissible because it was "so prejudicial as to completely destroy any possible probative value." *Id.* However, the prosecution argued that the issue was moot on appeal because the defendant had never taken the stand, and therefore the evidence of the unrelated crime was never admitted. *Id.* The *Tuell* court disagreed, stating that the trial court's ruling "effectively precluded appellant from exercising his constitutional right to testify," and therefore the question was not moot on appeal. *Id.*

The *Tuell* court's reasoning does not apply to this case because in *Tuell,* the evidence was inadmissible notwithstanding any constitutional violation. The constitutional analysis in that case was relevant only to determine whether an evidentiary error should be considered on appeal. Here, the trial court properly ruled that, absent any constitutional violation, the evidence was admissible. Skufca argues that his constitutional rights themselves required the trial court to rule the evidence inadmissible. Because *Tuell* does not support that argument, we do not find *Tuell* persuasive of Skufca's position.

## C. Other Legal Doctrines Indicate that Skufca's Rights Were Not Violated

Having determined that the trial court properly characterized the other drug transaction evidence as res gestae evidence, and that the cases relied on by the court of appeals do not support a finding that the evidentiary ruling was unconstitutional, we next turn to whether any other legal doctrine supports Skufca's position. First, we look to the admission of the evidence in the People's case-in-chief. Then, we consider the trial court's ruling on the permissible scope of Skufca's cross-examination.

### 1. Admission of the Evidence in the People's Case–In–Chief Did Not Violate Skufca's Constitutional Rights

■ Skufca asserts that by admitting evidence of the earlier drug transactions during the People's case-in-chief, the trial court impermissibly forced him to give up either his right to testify on his own behalf or his right to refrain from incriminating himself. Skufca appears to argue that once the People presented evidence of the prior drug transactions during their case-in-chief, he could not take the stand without raising issues that would open the door to cross-examination on those prior drug transactions. Skufca claims that because he could not discuss those prior transactions without running the risk of incriminating himself, the very admission of the evidence in the case-in-chief forced him to either remain silent or risk self-incrimination.

The choice that Skufca describes is a tactical choice, however, not one implicating his constitutional rights. A defendant may constitutionally be required to make difficult strategic choices, such as whether to give

advance notice of an alibi defense or forego the ability to present that defense. *People v. Martinez*, 970 P.2d 469, 472 (Colo.1998) (citing *Williams v. Florida*, 399 U.S. 78, 84–85, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970)). Here, Skufca essentially argues that the force and type of the evidence admitted against him during the People's case-in-chief would give him no choice but to testify about the evidence if he were to take the stand. However, it cannot successfully be contended that the mere strength of the People's evidence against Skufca unconstitutionally compels him to respond by incriminating himself. *See McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 28 L.Ed.2d 711 (1971), *vacated on other grounds*, 408 U.S. 941, 92 S.Ct. 2873, 33 L.Ed.2d 765 (1972) (noting that the force of the People's evidence as to the defendant's guilt may cause the defendant to wish to respond, thereby possibly incriminating himself, but that compulsion is not of the sort forbidden by the privilege against self-incrimination). There is no merit to the claim that the People may not introduce relevant, otherwise-admissible evidence against Skufca in their case-in-chief merely because Skufca believes that, as a tactical matter, its admission would compel him to give the jury a response if he were to take the stand.

Additionally, Skufca's own direct examination, not the People's case-in-chief, would control the extent to which Skufca could be forced to answer questions about the drug transactions on cross-examination. The trial court ruled that Skufca could be questioned about the evidence during cross-examination only to the extent that he opened the door during direct examination. The admission of the evidence during the People's case-in-chief may have given Skufca a tactical incentive to confront the issue if he chose to take the stand, thereby opening himself up to questions about the evidence on cross-examination, but this strategic consideration has no bearing on his constitutional ability to choose whether to testify on his own behalf.

### 2. The Trial Court Did Not Err by Failing to Limit the Scope of Cross–Examination

 Last, we turn to the trial court's ruling that if Skufca chose to testify, the People could cross-examine him about the prior drug transactions to the extent that Skufca opened the door to that topic. "The scope and limits of cross-examination for bias are within the sound discretion of the trial court." *Bonser v. Shainholtz*, 3 P.3d 422, 424 (Colo.2000). The trial court's decision is reviewed for abuse of discretion, and it will not be disturbed unless that decision was manifestly arbitrary, unreasonable, or unfair. *Id.*

In this case, the court of appeals recognized that Colorado law permits a broad scope of cross-examination of a defendant. *Skufca*, 141 P.3d at 881. It also noted that "[w]hen a defendant testifies in his own defense, his credibility may be impeached and his or her testimony assailed like that of any other witness, and the breadth of his waiver of Fifth Amendment rights is determined by the scope of relevant cross-examination." *Id.* Nonetheless, the court of appeals stated that the trial court erred in admitting the drug transaction evidence and that the "error was aggravated by the trial court's refusal to limit the prosecution's cross-examination" with respect to that evidence. *Id.*

However, the court of appeals' ruling that the scope of cross should have been limited to exclude evidence of the prior drug transactions, regardless of whether Skufca raised that topic on direct, contradicts long-standing precedent from this court and the United States Supreme Court holding that a defendant who chooses to take the stand waives his Fifth Amendment privilege against self-incrimination as to the topics made relevant during his direct examination. *See, e.g., Brown v. United States*, 356 U.S. 148, 155–56, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958) (quoting *Fitzpatrick v. United States*, 178 U.S. 304, 315, 20 S.Ct. 944, 44 L.Ed. 1078 (1900), as stating that a defendant "has no right to set forth to the jury all the facts which tend in his favor without laying himself open to a cross-examination upon those facts"); *People v. Mozee*, 723 P.2d 117, 123 (Colo.1986) ("It has long been recognized, however, that a defendant who voluntarily takes the stand and offers testimony in his own behalf is subject to cross-examination."). Had Skufca

taken the stand, the trial court would have allowed the People to cross-examine him only about topics Skufca himself raised on direct examination. Thus, the trial court's ruling was consistent with prior precedent, and it did not violate Skufca's constitutional rights.

### III. Conclusion

We hold that the trial court did not err in admitting the prior drug transaction evidence during the People's case-in-chief. In addition, we hold that the trial court did not err in ruling that the People could cross-examine Skufca about that evidence to the extent that Skufca opened the door to the evidence during his direct examination. Therefore, we reverse the decision of the court of appeals.

Justice RICE delivered the Opinion of the Court.

Justice EID does not participate.