The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Lynn Marie GRIFFITHS,
Defendant–Appellant.

No. 08CA2479.

Colorado Court of Appeals,
Div. I.

June 10, 2010.

John W. Suthers, Attorney General, Katherine A. Aidala, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, Lynn Marie Griffiths, appeals the judgment of conviction entered on a jury verdict finding her guilty of distributing a schedule II controlled substance (methamphetamine), unlawfully possessing one gram or less of a schedule IV controlled substance (alprazolam), and possessing drug paraphernalia. She also appeals the statutory drug offender surcharge imposed. We affirm.

We publish this opinion because Part IV concludes that incarceration does not necessarily render a defendant unable to pay the statutorily mandated drug offender surcharge. See § 18–19–103(1)(a), (6)(a), C.R.S. 2009.

## I. Factual Background

During a drug task force sting operation, a police informant gave L.B. $175 to purchase methamphetamine. L.B. dropped off the informant at a store, went to defendant's home, and purchased two packages of methamphetamine from her for $120, intending to keep the remaining $55 for profit. L.B. then returned to the store, where she was arrested. L.B. told police that defendant had more methamphetamine in her house and that more probably would arrive later that evening. The police recovered $50 from L.B. and $120 from defendant's purse, which matched the serial numbers on the bills provided to the informant. The remaining $5 was never recovered.

During a search of defendant's home, police found two tablets of alprazolam in a closet. They also recovered two syringes with blood in them, two radio scanners, and a spiral notebook containing phone numbers—commonly known as a pay-owe book.

## II. Evidence's Sufficiency

Defendant contends the evidence was insufficient to support defendant's distribution conviction. We disagree.

We review a challenge to the evidence's sufficiency de novo and consider the evidence most favorably to the prosecution, giving every reasonable inference that might be drawn from it. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005); *People v. Howard*, 89 P.3d 441, 444 (Colo.App.2003).

■ Defendant argues that the evidence was insufficient because:

- The only direct evidence of the sale came from L.B., who had a felony theft conviction and sought leniency in her own case based on her testimony.

- L.B. was not a credible witness because she was the original target of the drug task force's sting operation, possessed and used methamphetamine, was charged with methamphetamine distribution based on her participation in the incident, and testified under a grant of immunity.

- Although L.B. testified that defendant did not have the drugs weighed out and sprinkled some out from a baggie, no baggie of methamphetamine or residue was found in defendant's home.

- L.B.'s testimony was inconsistent with physical evidence revealing that she had a baggie of methamphetamine in her bra and methamphetamine in a cellophane pack in her pocket.

- The police admitted they had no way of knowing whether L.B. had the drugs on her person before going to defendant's home;

- No drugs were found in defendant's home.

- Although two syringes were discovered in defendant's home, no blood analysis was conducted.

- No precision scales, which are commonly associated with drug distribution, were found in defendant's home.
- Police discovered some small, red zip lock baggies in defendant's home; however, the drugs L.B. claimed to have acquired from defendant were not packaged in the same material.

■ Defendant further argues that L.B.'s testimony was not credible. When she testified at trial, L.B. admitted that she received use immunity and hoped the district attorney would favorably consider her testimony when addressing her case. We do not reweigh the evidence or assess witnesses' credibility on appeal because the jury is the sole judge of witness credibility. *People v. Greenlee*, 200 P.3d 363, 367 (Colo.2009) (a lay witness's reliability affects the evidence's weight and is a matter resolved by the fact finder); *People v. Taylor*, 159 P.3d 730, 734 (Colo.App.2006). L.B.'s testimony, if believed, and the evidence recovered from defendant's home— including the bills that matched the serial numbers provided to the informant—were sufficient to support defendant's convictions.

## III. Other Acts Evidence

Defendant contends her right to a fair and impartial jury was violated by the introduction of irrelevant and prejudicial prior bad acts. We disagree because we conclude the evidence constituted admissible res gestae evidence.

## A. Factual Background

Prior to trial, defendant filed a motion in limine to exclude "any evidence that [she] sold or distributed narcotics on prior undisclosed occasions" and "any evidence that [she] used methamphetamine on prior occasions." The trial court granted the motion as confessed.

Defendant maintains that the People violated the court's order by introducing evidence that defendant's body showed signs of drug use, scanners such as those found in her home are commonly associated with drug distribution, and the notebook found in her purse was the same type used by drug dealers to document sales. An officer testified that she observed that defendant "had scabs on her arms and on her neck and chest area that appeared to be puncture wounds possibly from needles, hypodermic needles."

Another officer testified that "police scanners that pick up police radios" were recovered during a search of defendant's home and that "they are used ... to alert the occupants of the home to police presence in the area so that they can either stop dealing narcotics or so that they can stop using narcotics or basically shut down their home."

The officer also identified a pocket spiral notebook containing phone numbers found in defendant's purse. Defense counsel objected, and a bench conference ensued.

DEFENSE COUNSEL: [I]t is my understanding that this officer is going to testify that there is nothing in this exhibit itself that would actually corroborate or document any transaction that is alleged to have taken place on the date of [the incident] because this was a cash transaction and the Pay–O Sheets are typically used to document drugs that are fronted or on some type of a debt where cash is not paid so people can keep track of what is owed to them and how much they dealt out. My concern is that if that's the situation here, we are talking about evidence of prior distribution. Evidence that would be a 404(b) situation here. In other words, I'm concerned that the People would try to use evidence of prior transactions assuming that they exist through this exhibit to prove it therefore by similar type behavior that Ms. Griffiths was doing the same thing on this particular occasion.

PROSECUTOR: I am not going to try and make the argument that she has done this in the past or anything like that. But I think he should be allowed to testify that yes, these things are commonly seen with distribution.

DEFENSE COUNSEL: I think the whole reason he would say they are commonly seen in distribution is because they are evidence of the actual, they are basically financial ledgers in a way, a very short-hand and very rudimentary way of the transaction. And unless that's going to be explained to the jury, which I don't think it

should be, I don't see the relevance of this particular exhibit unless the full significance is explained, and I don't think the full significance is proper to be explained to the jury in this situation.

PROSECUTOR: Again I would say that relevance is a small standard on this and the fact that Officer Newton could testify that based on his experience, Pay–O Sheets are often indicative of distribution. I think that certainly is relevant and I'm not going to get into, you know, him trying to relate that there were prior instances where she dealt drugs or anything like that. But I think he should be able to testify that yes, in my experience, you know, these things can be indicative of distribution.

DEFENSE COUNSEL: Past distribution.

PROSECUTOR: Or current distribution.

COURT: I disagree. I do think it's relevant to the limited extent that you have already talked about. That would be the only thing it can be regarding that document.

The prosecutor asked the officer, "Based on your experience as a law enforcement officer, what significance could [the notebook] have, if any, to drug distribution?" He testified, "They have narcotics contacts, people that may buy or sell drugs at a location inside of it. Without looking further into the notebook, I can't really say exactly what's in it other than just phone numbers."

### B. Analysis

■ We review a trial court's ruling concerning evidence's admissibility and relevance for abuse of discretion and will not overturn the ruling unless it is manifestly arbitrary, unreasonable, or unfair. *Yusem v. People,* 210 P.3d 458, 463 (Colo.2009); *People v. Kyle,* 111 P.3d 491, 496 (Colo.App.2004).

■ "Res gestae is a theory of relevance which recognizes that certain evidence is relevant because of its unique relationship to the charged crime." *Greenlee,* 200 P.3d at 368; *see People v. Skufca,* 176 P.3d 83, 86 (Colo.2008). Res gestae evidence forms an integral and natural part of the crime, *Skuf-*

*ca,* 176 P.3d at 86; *People v. Jimenez,* 217 P.3d 841, 864 (Colo.App.2008); *People v. Asberry,* 172 P.3d 927, 932 (Colo.App.2007), and provides the fact finder with a full and complete understanding of the crime's surrounding events and context. *People v. Quintana,* 882 P.2d 1366, 1373 (Colo.1994).

■ To be admissible, res gestae evidence must be relevant and its probative value must not be substantially outweighed by the danger of unfair prejudice. *Id.* at 1374. CRE 401 defines relevant evidence as any "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "The determination of relevancy is within the province of the trial court and will not be overturned absent an abuse of discretion." *Quintana,* 882 P.2d at 1374. We must assume the maximum probative value a reasonable fact finder might give to the evidence, and the minimum unfair prejudice reasonably to be expected. *Asberry,* 172 P.3d at 933.

■ Here, defendant's physical appearance, testimony regarding scanners, and testimony regarding the notebook helped provide the jury a more complete understanding of the events surrounding the crime. This evidence was relevant to show that defendant knowingly possessed the drug paraphernalia and alprazolam and knowingly sold or distributed methamphetamine. *See People v. Valdez,* 56 P.3d 1148, 1150 (Colo.App.2002) (two spoons containing heroin residue, marihuana pipe, and marihuana were admissible res gestae evidence in unlawful possession of alprazolam case); *People v. Ornelas,* 937 P.2d 867, 873 (Colo.App.1996) (evidence of defendant's activities and knowledge relative to distribution of other drugs was admissible res gestae evidence because it related to the defendant's knowledge and intent to distribute cocaine). Additionally, this evidence helped refute defendant's theory of defense, that defendant had not engaged in drug distribution and L.B. paid her $120 to settle a debt.

■ "Relevant evidence is inherently prejudicial; but it is only *unfair* prejudice,

*substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403." *Masters v. People*, 58 P.3d 979, 1001 (Colo.2002) (quoting *United States v. McRae*, 593 F.2d 700, 707 (5th Cir.1979)). Accordingly, we conclude that the danger of unfair prejudice did not outweigh the evidence's relevance. *See People v. Gay*, 24 P.3d 624, 629 (Colo.App.2000) (officer's expert opinion that defendant's alleged actions were consistent with those of a drug runner did not create improper inference).

■ Defendant argues that this evidence violated CRE 404(b). We disagree because res gestae evidence is not subject to CRE 404(b), which excludes evidence of prior criminality or bad acts, and can be admitted without a limiting instruction. *People v. Martinez*, 24 P.3d 629, 633 (Colo.App.2000).

■ Nor are we persuaded that the introduction of this evidence violated the court's earlier order prohibiting evidence of past drug distribution and use. During the bench conference, the prosecutor referenced the order and stated that he would not elicit testimony suggesting that defendant had engaged in prior drug distribution and use. The court ruled that evidence about the pay-owe sheets was relevant to show current use and distribution. Because defendant's appearance, scanners, and pay owe sheets were relevant to show current use and distribution, the court did not violate its earlier order in allowing this evidence.

## IV. Drug Offender Surcharge

Defendant contends the trial court erred in imposing the drug offender surcharge. We disagree.

At sentencing, defendant asked the trial court to waive or reduce the drug offender surcharge based on her inability to pay. In support of her request, she argued that she suffered from severe asthma, had been unemployed for some time, and would be incarcerated. On appeal, defendant points out that the presentence report indicated that she was unemployed, rented her home, and had one child who still lived at home. She also maintains that representation by the public defender and granting of her motion to proceed in forma pauperis on appeal indicated that she was indigent and lacked the ability to pay the surcharge.

In ordering defendant to pay the drug offender surcharge of $4,500, the court stated:

> At this time I can't find by clear and convincing evidence that you are unable to pay [the surcharge] given the sentence and the abilities that I perceive that you do have Ms. Griffiths. So it is not waived. However, if additional information is available and can be submitted by motion that can be done.

■ Whether a defendant has the financial ability to pay a statutorily mandated surcharge is a factual question reviewed for clear error. *People v. Villano*, 181 P.3d 1225, 1230 (Colo.App.2008). If the record supports the trial court's findings, they should not be disturbed on appeal. *People v. Pennington*, 989 P.2d 230 (Colo.App.1999).

■ Section 18–19–103(1)(a) and (6)(a) require imposition of a $4,500 drug offender surcharge for class two felonies, unless the court finds that the defendant is unable to pay any portion of the surcharge. The drug offender has the burden of proving by clear and convincing evidence that he or she is financially unable to pay any portion of the surcharge. § 18–19–103(6)(b), C.R.S.2009.

■ Defendant's incarceration does not necessarily render her unable to pay the surcharge. *See People v. Apodaca*, 998 P.2d 25, 31 (Colo.App.1999) (statutory scheme governing restitution evidences legislature's intent to have courts enter restitution orders even where defendant is sentenced to incarceration). In section 18–19–101, C.R.S.2009, the legislature declared, "It is the intent of the general assembly in enacting this article to shift the costs of controlled substance use to those persons who unlawfully traffic, possess, or use controlled substances." Moreover, section 16–18.5–106(1), C.R.S.2009, authorizes the department of corrections (DOC) to conduct an investigation into a defendant's financial circumstances for purposes of determining his or her ability to pay court-ordered costs, surcharges, and other fees. Section 16–18.5–106(2), C.R.S.2009, also allows the

DOC to direct that, at a minimum, twenty percent of the inmate's bank account deposits be directed toward payment of any outstanding court-ordered surcharge. Thus, the legislative scheme considers a defendant's financial ability to pay court-ordered fees, costs, and surcharges while incarcerated.

■ Defendant's indigence is a separate consideration and is not dispositive of her ability to pay the drug offender surcharge. *See People v. Fisher,* 189 Colo. 297, 300, 539 P.2d 1258, 1260 (1975) (whether presumably innocent defendant is declared indigent for purposes of appointing counsel before being brought to trial involves different considerations than question of whether convicted defendant may be charged with costs); *People v. Mata,* 56 P.3d 1169, 1177 (Colo.App. 2002) (rejecting the defendant's argument that imposition of costs for transcripts should be struck because trial court granted his request to proceed in forma pauperis on appeal).

■ At the hearing, defense counsel stated defendant had earned her GED and was pursuing college courses through the Department of Corrections. She was sentenced to eleven years, and the court did not impose a specific due date for payment. *See People in Interest of M.H.,* 661 P.2d 1195, 1196 (Colo. App.1983) (court recognized the defendant's difficult financial situation and mitigated hardship by declining to impose restitution due date). Further, defendant did not assert that she would not earn or receive any income while incarcerated, which could be used to pay the surcharge. Because the record supports the court's determination that defendant had not met her burden of proving she was unable to pay and section 16–18.5–106(1) accounts for defendant's incarceration in calculating her ability to pay the surcharge, we will not disturb it on review.

The judgment and sentence are affirmed.

Judge TAUBMAN and Judge FURMAN concur.